UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:25-CV-22530-BECERRA/TORRES

JESUS E. GONZALEZ HERNANDEZ,

       Plaintiff,

vs.

STATEWIDE ELECTRICAL SERVICES,
INC. AND NOEL MELO,

       Defendant.

_____/

### PLAINTIFF'S JESUS E. GONZALEZ HERNANDEZ RESPONSES TO DEFENDANT'S FIRST SET OF INTERROGATORIES

Plaintiff, Jesus E. Gonzalez Hernandez, responds to the Interrogatories served on him by Defendant, Statewide Electrical Services, Inc., and Noel Melo as follows:

1.    Please state your full name, all aliases and names by which you have been known during the relevant period, all addresses at which you lived during the relevant period, your date of birth, all email addresses you used during the relevant period, all telephone numbers you used during the relevant period, and your social security number.

**ANSWER:**

**Jesus Esnol Gonzalez Hernandez; 19320 SW 190th ST, Miami, FL 33187; December 24, 1964; (786) 800-0791; xxx-xx-5317.**

2.    For each workweek during the relevant time period in which you contend that you worked more than 40 hours, please identify: (a) the specific calendar week (including the Sunday start date and Saturday end date); (b) the exact number of hours you claim to have worked that week; (c) the exact start time and end time for each day of that week; (d) a description of all work tasks you

1

Exhibit C

performed each day; (e) the location where you performed work each day; (f) all other persons who were present and can verify the hours you claim to have worked each day; and (g) all documents, records, notes, or other materials you possess or possessed that document or support your claim that you worked the hours you describe for that specific week.

**ANSWER:**

**The Plaintiff states that during the relevant period, he regularly worked approximately 48 hours per workweek, including overtime hours for which he was not fully compensated. Plaintiff's handwritten summary estimating overtime hours has been produced along with Plaintiff's Sun Pass records. (Bates Nos. 000856 and 000915-000939).**

3. Describe with specificity the factual basis for your allegation in the Complaint that you "regularly and routinely worked over 40 hours in one or more workweeks." In your answer, explain how you determined the number of hours you worked, what method you used to track or remember your hours, what contemporaneous records you maintained or reviewed, and identify all facts, documents, and witnesses that support your contention that you worked more than 40 hours in any workweek during the relevant time period.

**ANSWER:**

**Mr. Gonzalez Hernandez objects to the Defendants' inappropriate attempt to avoid the impact of their failure to comply with the timekeeping requirements imposed by the FLSA. Because the Defendants did not comply with the FLSA's requirement to accurately track the times that I started and stopped working each day, the law entitles me to estimate the hours I worked each day. *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 66 S. Ct. 1187 (1946).**

**Witnesses:**
- **Jesus Gonzalez**
- **Esnol Cantero, my son, who worked alongside me and witnessed the same conduct.**
- **Leo Interian, chief supervisor with the county, who observed work performed at several stations.**
- **Paola Usaga, secretary for Mr. Melo, who handled communications**

2

**and payroll matters**

4.      State whether you possess, or at any time possessed, any documents or records showing that you worked 48 hours per week or any amount of overtime hours during the relevant time period. If your answer is anything other than an unqualified "no," identify each such document or record, describe its contents, state when it was created, state who created it, and state where it is currently located.

**ANSWER:**

**Plaintiff states that during the relevant period, he regularly worked approximately 48 hours per week, determined by his personal recollection, routine work schedule, and handwritten notes which have been produced (Bates No. 000856).**

5.      Describe in detail the basis for your calculation of overtime wages allegedly owed to you, including: (a) how you determined the specific number of overtime hours worked in each workweek; (b) how you calculated the total amount of alleged unpaid overtime wages; (c) all documents you reviewed or relied upon in making these calculations; (d) all persons who assisted you in making these calculations; and (e) whether you made any effort to verify your recollections of hours worked against any contemporaneous records, time sheets, payroll records, or other documentation before filing this lawsuit.

**ANSWER:**

**Mr. Gonzalez Hernandez objects to the Defendants' inappropriate attempt to avoid the impact of their failure to comply with the timekeeping requirements imposed by the FLSA. Because the Defendants did not comply with the FLSA's requirement to accurately track the times that I started and stopped working each day, the law entitles me to estimate the hours I worked each day. *See Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 66 S. Ct. 1187 (1946). Without waiver of objections, please refer to my response to INT No. 1, above.**

6.      For each week during the relevant time period that you claim to have worked overtime

3

hours, state: (a) what time you typically arrived at the work site; (b) what time you typically departed from the work site; (c) what time you took meal breaks or rest breaks; (d) what tasks consumed your time such that you worked more than 40 hours; (e) whether you discussed your alleged overtime hours with any supervisor or manager; and (f) whether you complained to anyone at Defendants about not being paid for overtime.

**ANSWER:**

**(a) − (b)**
**At Station 1, I typically arrived at 9:30 a.m. and was scheduled to depart at 8:30 p.m. However, because this was a new project and work was delayed, I frequently remained past 8:30 p.m. to complete required tasks.**

**At Stations 2 through 6, I typically arrived at 5:30 a.m. and was scheduled to finish at 4:30 p.m. On many occasions, however, work extended beyond that time due to project delays and additional duties, particularly when unloading and setting up new equipment.**

**(c)**
**I did not track breaks shorter than about 10 minutes since the FLSA does not allow those to be deducted from my total work hours. My lunch breaks were supposed to last 30 minutes, but Mr. Melo frequently required me to return to work without giving me the full 30 minutes. I estimate that most of my lunch breaks lasted between 10 and 20 minutes.**

**(d)**
**The work I did was not broken into specific tasks for my first 40 hours each week, followed by different tasks afterward. I focused on the required duties, which often meant working more than 40 hours per week to finish them. I spent a lot of time dismantling old equipment, cleaning the site, assembling and installing new equipment, and preparing the stations for operation. Since the project was designed for a crew of four, but only two of us were assigned to it, the two of us had to put in a lot more time and effort to complete the work. At Stations 2-6, I often had to improvise and complete tasks without direct supervision, which required additional time.**

**(e)**
**I attempted to raise the issue of unpaid overtime with Mr. Melo, but he stopped responding to my calls and stopped visiting the worksites. Since he was not responsive, I complained about not being paid overtime wages to Ms.**

135 San Lorenzo Avenue, Suite 770, Coral Gables, Florida 33146
TEL 305.230.4884   FAX 305.230.4844
*www.fairlawattorney.com*

**Usaga, who handled Mr. Melo's communications. I also provided documentation, including a calendar showing the extra hours worked and an audio recording in which Ms. Usaga discussed the overtime hours that would not be paid but might later be compensated with time off. (Served on Defendants with Plaintiffs' responses to RFP01).**

**(f)**
**I discussed the issue of working overtime (but not being paid for it) with Mr. Melo's secretary, Ms. Usaga. She served as his intermediary and was assigned to handle project communications. I would ask her about why the checks did not reflect the actual hours I worked and about not being paid for the overtime hours I worked when she gave out the paychecks, but she never gave a satisfactory response.**

**A particularly memorable discussion occurred at Station 2 on or about May 25, 2023, when my son (Esnol), Ms. Usaga, and I discussed the issue. Ms. Usaga responded that the work had to be completed in 20 hours and said that if we exceeded 20 hours, we would not be paid for that week but would instead be compensated later with time off.**

7.      Identify all communications (whether oral, written, or electronic) you had with any representative of Defendants during the relevant time period regarding: (a) the number of hours you were working; (b) any claimed overtime hours; (c) any request for overtime compensation; (d) any complaint about unpaid wages or overtime; or (e) any disagreement about the hours you worked or the compensation you received. For each such communication, state the date, the participants, the substance of the communication, and identify all documents that memorialize or refer to the communication.

**ANSWER:**

*See* **Response to INT No. 6(f), above.**

8.       State whether you ever complained to anyone at Defendants, either orally or in writing, that you were not being paid properly for all hours worked or that you were owed overtime compensation. If yes, identify each such complaint, including: (a) the date of the complaint; (b) the

135 San Lorenzo Avenue, Suite 770, Coral Gables, Florida 33146
TEL 305.230.4884   FAX 305.230.4844
*www.fairlawattorney.com*

person(s) to whom you complained; (c) the substance of your complaint; (d) any response you received; and (e) all documents that memorialize or refer to each complaint.

**ANSWER:**

*See* **Response to INT No. 6(f), above.**

9.      State whether you signed any time sheets, paychecks, certified payroll reports, or other records during the relevant time period that indicated you worked 40 hours or fewer in a workweek. If yes, for each such document: (a) identify the document; (b) state the date you signed it; (c) state whether the hours shown on the document were accurate; (d) if the hours were not accurate, explain why you signed the document; and (e) explain whether you raised any objection at the time of signing or thereafter that the hours shown were inaccurate.

**ANSWER:**

**The only documents I was required to sign during the relevant time period were to receive my weekly paychecks from the Defendants (which were issued and signed each Monday).**

**The hours reflected on those paychecks were always shown as exactly 40 hours per week, regardless of the actual time worked. Those hours were not accurate, as I regularly worked more than 40 hours per week without receiving overtime pay.**

**I signed the checks because I was told I had to sign them to receive payment for the week. I was afraid that not signing for the paycheck would result in not being paid or losing my job.**

**Mr. Melo said that my son and I would receive a (rather significant) bonus to make up for the additional hours we worked. However, Defendants never fulfilled this promise. They kept offering and mentioning the bonus to keep us from complaining about the inaccurate hours shown on the paychecks and to discourage my son and me from complaining further.**

**I objected verbally to the inaccuracy of the hours reflected on the paychecks on multiple occasions. The most significant disagreement occurred at Station 2 on or about May 25, 2023, when my son, Ms. Usaga (Mr. Melo's**

6

**Secretary), and I discussed the issue. During that discussion, Ms. Usaga stated that the work had to be completed in 20 hours. Which was impossible given the project's scope. We were told that if we exceeded the 20 hours, we would not be paid for that week but would instead be compensated later with time off.**

**All such objections and discussions were verbal; no written documents memorialize them.**

10.     Identify all paycheck stubs, wage statements, W-2 forms, or other payment records you received from Defendants during or for the relevant time period that you claim were incorrect or incomplete, state whether you complained to anyone at Defendants about the payment and, if so, identify the date of your complaint, to whom you complained, and the substance of your complaint.

**ANSWER:**

**Please refer to BATES Nos. 000001 - 000134 and my Response to INT Nos. 6(f) and 9, above.**

11.     Describe all facts that support your contention that Defendants' alleged violations of the FLSA were willful. In your answer, identify all documents and witnesses that support your contention of willfulness, and explain the specific conduct by Defendants that you contend was willful.

**ANSWER:**

**Defendants' violations of the FLSA were willful because Defendants knew or reasonably should have known about the requirement to pay me overtime wages for working more than 40 hours a week, especially given the nature of the projects and contract documents requiring not only the payment of overtime but also attesting that the time and pay records were correct (through certified payrolls). Despite this knowledge and these sworn attestations, Defendants knowingly and intentionally failed to pay overtime compensation for hours worked in excess of 40 per week, even though they were fully aware of the overtime I regularly worked to complete the assigned projects.**

**Defendants structured the work and payroll practices to avoid paying**

7

**overtime while creating the false appearance of compliance, including by:**

* **Refusing to pay overtime despite knowledge of long hours: Defendants knew that the work could not be completed within 40 hours per week, and that I worked more than 40 hours a week, but did not pay me overtime despite my complaints. Defendants said that any overtime hours would be "compensated" later with time off at other stations, rather than proper overtime wages, which never actually happened.**
* **Defendants required me to sign weekly paychecks that falsely reflected I worked exactly 40 hours each week.**

**Supporting evidence and witnesses**
* **Documents**
  o **[BATES Nos. 000915-000939].**
  o **Calendar showing the extra hours worked. (Served on Defendants with Plaintiffs' responses to RFP01).**
  o **Audio recording in which Ms. Usaga discussed the overtime hours that would not be paid but might later be compensated with time off. (Served on Defendants with Plaintiffs' responses to RFP01).**
  o 
* **Witnesses**
  o **Jesus Gonzalez**
  o **Esnol Cantero, who worked alongside me and witnessed the same conduct.**
  o **Paola Usaga, secretary for Mr. Melo, who handled communications and payroll matters.**
  o **Leo Interian, chief supervisor with the county, who observed work performed at several stations.**
**Discovery continues.**

12. Describe in detail your typical daily work schedule during the relevant time period, including:

(a) what time you typically woke up; (b) what time you typically left home to go to work; (c) how long it took you to travel to work; (d) what time you typically arrived at the work site; (e) what time you typically started working; (f) what time you typically took breaks or meal periods and how long those breaks lasted; (g) what time you typically stopped working; (h) what time you typically left the work site; (i) how long it took you to travel home; and (j) what time you typically arrived home.

8

State whether this schedule varied from week to week, and if so, describe how it varied.

**ANSWER:**

*See* **Response to INT No. 6(a-b).**

**For Stations 2-6, I estimate that I typically woke up at 4:30 am, picked up my son and left my son's home at 5:10 a.m., and drove for about 20 minutes to the jobsite to arrive at 5:30 a.m. and begin working between 5:50 a.m. and 6 a.m. I would then stop working at 5:00 p.m., leave the jobsite at 5:10 p.m., and arrive at my son's home at around 5:30 p.m. or 6:00 p.m.**

13.   Identify all sources of information that you used to calculate the $6,331.92 in alleged unpaid overtime wages stated in your Rule 26(a) disclosures and the $6,365.52 "initial estimate of the total amount of alleged unpaid wages outlined in the Joint Scheduling Report (D.E. 16). In your answer, describe: (a) how the figures were calculated; (b) what hourly rate was used; (c) how many hours of overtime were included in the calculation; (d) what documents or records were reviewed; (e) whether any estimates or assumptions were made; and (f) whether the calculation is based on your personal recollection or any documentary evidence.

**ANSWER:**

**Based on my estimated hours worked, and with the assistance of my attorneys, the overtime owed to me was calculated as follows:**

**My regular hourly rate was $50.25/hour**
**$50.25/hour x 1.5 = $75.38/OT Hour**
**$75.38/OT Hour x 84 OT Hours = $6,331.50**

**I estimated working 84 hours of overtime based on the following overtime hours worked during the following weeks at each of the stations I worked for the Defendants:**

**April 2023 – September 2023**
- **Station 1 (Allapattah) – 16 hours of unpaid overtime**
  - **April 17 – April 20, 2023: 8 hours of unpaid overtime**
  - **April 24 – April 27, 2023: 8 hours of unpaid overtime**
- **Station 2 (Santa Clara) – 20 hours**

9

135 San Lorenzo Avenue, Suite 770, Coral Gables, Florida 33146
TEL 305.230.4884   FAX 305.230.4844
*www.fairlawattorney.com*

- o      **May 8 – May 1, 2023: 6 hours of unpaid overtime**
- o      **May 15 – May 18, 2023: 6 hours of unpaid overtime**
- o      **May 22 – May 25, 2023: 8 hours of unpaid overtime**
- **Station 3 (Culmer) – 24 hours of unpaid overtime**
  - o      **June 12 – June 15, 2023: 6 hours of unpaid overtime**
  - o      **June 19 – June 22, 2023: 8 hours of unpaid overtime**
  - o      **June 26 – June 29, 2023: 10 hours of unpaid overtime**
- **Station 4 (Gap Tie 2) – 8 hours of unpaid overtime**
  - o      **July 17 – July 20, 2023: 4 hours of unpaid overtime**
  - o      **July 24 – July 27, 2023: 4 hours of unpaid overtime**
- **Station 5 (Overtown) – 8 hours of unpaid overtime**
  - o      **August 21 – August 24. 2023: 4 hours of unpaid overtime**
  - o      **August 28 – August 3, 2023: 4 hours of unpaid overtime**
- **Station 6 (Brickell) – 8 hours of unpaid overtime**
  - o      **September 11 – September 14, 2023: 2 hours**
  - o      **September 18 – September 21, 2023: 3 hours**
  - o      **September 25 – September 28, 2023: 4 hours**

14.     State whether you dispute the accuracy of any of the certified payroll reports, time sheets, or payroll records that Defendants have produced in this case showing that you worked 40 hours per week during the relevant time period. If you dispute the accuracy of any such record, identify the specific record, explain the basis for your dispute, and identify all documents and witnesses that support your contention that the record is inaccurate.

**ANSWER:**

**Yes.  I dispute that these records are accurate because, as I stated above, Defendants did not keep track of the times I started and stopped working each day. Even Mr. Melo's Answers to my Interrogatories indicated that he "kept records" without identifying how he maintained time records. This is untrue, as Defendants did not have me use any method to document or indicate when I started or stopped working each day, nor did they have me sign or otherwise indicate or agree to the times I worked each day.  The only records the Defendants claim to have are those Mr. Melo claims to have created. My son, Esnol Cantero, and I know that the records are inaccurate, as do Mr. Melo and Ms. Usaga.**

135 San Lorenzo Avenue, Suite 770, Coral Gables, Florida 33146
TEL 305.230.4884   FAX 305.230.4844
*www.fairlawattorney.com*

JESUS E. GONZALEZ HERNANDEZ

_____
Jesus Esnol González Hernández (Dec 2, 2025 15:55:22 EST)

STATE OF FLORIDA          :

                          : SS.

COUNTY OF Dade            :

Before me, the undersigned authority personally appeared JESUS E. GONZALEZ HERNANDEZ, who appeared __ in person or ✔ via videoconference and who, after being duly sworn, states under oath that the foregoing Answers to Interrogatories are true and correct.

SWORN TO AND SUBSCRIBED before me this 2 day of December, 2025, and who is personally known by me or who produced Drivers License as identification.

_____
Signature Notary Public – State of Florida

Print Name: Steffany Sanguino

My Commission Expires: 11/8/29

Notary Public State of Florida
Steffany Sanguino
My Commission  HH 698200
Expires  11/8/2029

11

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing document was served by email this 2nd day of December 2025, on Stephen R. Verbit, Esq. at Stephen R. Verbit, P.A. 6741 Orange Drive Davie, Florida 33314, <u>sverbit@verbitlawfl.com</u> , *Counsel for Defendant.*

<u>s/ Katelyn Schickman, Esq.</u>
Brian H. Pollock, Esq.
Florida Bar No. 174742
<u>brian@fairlawattorney.com</u>
Katelyn Schickman, Esq.
Florida Bar No. 1064879
katie@fairlawattorney.com
FAIRLAW FIRM
135 Lorenzo Avenue, Suite 770
Coral Gables, Florida 33146
Telephone: (305) 230-4884
*Counsel for Plaintiff*

12