**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

CASE NO. 1:25-cv-22530-JB/Torres

JESUS E. GONZALEZ HERNANDEZ, and
ESNOL ALEJANDRO GONZALEZ CANTERO,

      Plaintiffs,

v.

STATEWIDE ELECTRICAL SERVICES, INC.,
a Florida corporation, and NOEL MELO,

      Defendants.

---

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND**
**INCORPORATED MEMORANDUM OF LAW**

Pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1, and because the record shows there is no genuine dispute as to any material fact and Defendants are entitled to judgment as a matter of law, Defendants Statewide Electrical Services, Inc. ("Statewide") and Noel Melo ("Melo") move for summary judgment as to all claims of Plaintiff Jesus E. Gonzalez Hernandez ("JGH") and Opt-In Plaintiff Esnol Alejandro Gonzalez Cantero ("Esnol"), and in support state as follows:

**INTRODUCTION**

This is a single-count FLSA overtime case arising out of a six-month Miami-Dade County Metrorail public-works project on which Plaintiffs worked together as licensed electricians for Statewide between April 17 and September 28, 2023. Each Plaintiff claims exactly 84 unpaid

1

overtime hours, calculated to identical week-by-week breakdowns across the same six Metrorail stations.

Plaintiffs' claims fail at the threshold under the ordinary Rule 56 standard. Statewide kept four contemporaneous, mutually-corroborating records of Plaintiffs' hours, including weekly Certified Payroll Reports filed with Miami-Dade County under penalty of perjury through the LCP Tracker system as a condition of participation in this federally-funded transit project. Falsification of those reports would have exposed the signatory to federal criminal liability under 18 U.S.C. § 1001. All four record sources show Plaintiffs worked 40 hours or fewer in every workweek, with no overtime. To prevail, Plaintiffs require the Court to infer that Statewide committed serial federal felonies across thirty consecutive weekly filings to suppress total project wages of approximately $12,700. No reasonable factfinder could draw that inference on this record.

Plaintiffs' affirmative case is materially weaker. Their primary evidence is a one-page handwritten summary marked Bates 000856, prepared not by either Plaintiff but by JGH's wife in approximately September 2023. After his wife prepared the summary, JGH discarded the personal notebook from which it was supposedly derived, leaving no contemporaneous source material. Esnol kept no records and admits he relies solely on memory. JGH testified that his 84-hour figure is "an estimate" and that his answer to every question about what work caused his overtime would be the word "working." Esnol testified "I don't remember" station after station. Both Plaintiffs separately swore in interrogatory answers that they "regularly worked approximately 48 hours per workweek" for 25 weeks, which implies 200 overtime hours each, more than double what they now claim. Neither offered any explanation.

Two further independent flaws complete the picture. First, the SunPass toll records for the company vehicle Statewide furnished JGH foreclose Plaintiffs' overtime claims as a matter of

2

arithmetic. On Plaintiffs' own sworn admissions about their schedule and twenty-minute commute, a fully-completed 40-hour workweek would require 42 hours and 40 minutes of cumulative toll-to-toll vehicle time. No workweek in the SunPass production reaches that baseline. Second, the contemporaneous "412034 Hours" spreadsheet shows that for nine of the ten workweeks in which Plaintiffs swore they worked overtime at the first four stations, JGH and Esnol either were not working at all or were working at a different station entirely.

The Sixth, Seventh, Eighth, and Eleventh Circuits have uniformly held that vague memory-based estimates flatly refuted by employer records, internally inconsistent with the plaintiff's own sworn admissions, and unsupported by any contemporaneous documentation cannot create a triable issue under *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946). Plaintiffs' record fails on each ground. Defendants are entitled to summary judgment.

## STATEMENT OF FACTS

The material facts are set forth in detail in Defendants' contemporaneously filed Statement of Material Facts ("SMF"). The narrative below summarizes the core facts and incorporates the SMF by reference.

*The Project and the Schedule.* Statewide is a Florida electrical contracting corporation owned and operated by Melo since 1999. SMF ¶¶ 1–2; Ex. I, Melo Decl. ¶ 2. Between April and October 2023, Statewide performed electrical work on a Miami-Dade County Metrorail public-works project subject to the Miami-Dade County Prevailing Wages Ordinance and applicable federal prevailing-wage requirements for federally-funded transit projects. SMF ¶¶ 4, 16. Plaintiffs, both licensed electricians, worked together on the project from April 17 through September 28, 2023, paid at the Miami-Dade prevailing wage rate of $50.52 per hour. SMF ¶¶ 4–5. At JGH's own request, Plaintiffs worked a four-day, ten-hour-per-day schedule, Monday

3

through Thursday (the "4×10 Schedule"), totaling 40 scheduled hours per week. SMF ¶ 53; Ex. I, Melo Decl. ¶ 4. Neither Plaintiff ever requested or received authorization to work beyond 40 hours in any workweek. Ex. I, Melo Decl. ¶ 4.

*The Four Record Sources.* Statewide maintained four independent layers of contemporaneous records of Plaintiffs' hours:

(a) Melo's handwritten daily time sheets, maintained personally for each employee on each project, SMF ¶ 15; Ex. I, Melo Decl. ¶ 5;

(b) the "412034 Hours" Excel spreadsheet, maintained in the ordinary course of business under Melo's supervision and recording project activities, station locations, employee assignments, hours per employee, and weekly totals cross-referenced to LCP report numbers, SMF ¶¶ 18–19; Ex. I, Melo Decl. ¶¶ 9–11 (authenticating the spreadsheet under Fed. R. Evid. 803(6));

(c) weekly Certified Payroll Reports (LCP #71 through LCP #100) filed by Statewide with Miami-Dade County through the County's LCP Tracker system, signed by Melo under penalty of perjury and made available to applicable federal monitoring authorities, SMF ¶¶ 16–17; Ex. I, Melo Decl. ¶¶ 6–8; and

(d) SunPass electronic toll records for the company vehicle Statewide furnished to JGH for the project. SMF ¶¶ 22–23; Ex. I, Melo Decl. ¶¶ 13–16.

The LCP Tracker reports are not internal Statewide documents. They were filed weekly with Miami-Dade County as a condition of compliance with the prevailing-wage requirements applicable to this federally-funded project, and any false statement contained in them exposed the signatory to federal criminal liability under 18 U.S.C. § 1001. SMF ¶ 16. All four record sources

4

uniformly show Plaintiffs worked 40 hours or fewer in every workweek, with no overtime. SMF ¶¶ 17, 20–21, 24, 55; Ex. I, Melo Decl. ¶¶ 4, 8, 11–12.

Throughout the project period reflected in the SunPass production, JGH used the company vehicle to commute to and from the jobsite, with Esnol as his passenger, on every workday on which they performed work. Esnol confirmed at deposition that the two "would be together all that time" between leaving for work and returning home. SMF ¶ 22; Ex. A, Melo Dep. 67:18 – 69:5; Ex. J, JGH Dep. 58:19 – 59:14; Ex. K, Esnol Dep. 11:13 – 12:6.

*Plaintiffs' Lack of Contemporaneous Records.* Plaintiffs collectively have no contemporaneous record of any hours worked beyond what Statewide recorded. JGH testified that he kept a personal notebook of his hours during the project, containing day-by-day, week-by-week, station-by-station detail with "all the numbers for each one of the stations." SMF ¶¶ 28, 32. After his wife, Maritza, prepared Bates 856 in approximately September 2023, JGH discarded the notebook. SMF ¶¶ 29–32. JGH had testified that he noticed the alleged underpayment for overtime hours during the very first week of work on the project. SMF ¶ 26. Esnol kept no calendar, planner, notebook, or diary, and testified he relied solely on memory in calculating his overtime claim. SMF ¶¶ 42, 45.

Bates 856 contains the names of six Metrorail stations and a single total number of claimed overtime hours next to each station name, with no daily start times, daily stop times, daily hours worked, or any other day-by-day detail. SMF ¶ 34. JGH testified that the 84-hour figure stated in Bates 856 is "an estimate." SMF ¶ 35. As to specific dates and specific work that allegedly caused his claimed overtime, JGH testified he "could not recall" the dates and that his answer to every question about what work caused his overtime would be the word "working." SMF ¶¶ 38–39. Esnol testified "I don't remember" station after station. SMF ¶ 37.

*Plaintiffs' Internally Inconsistent Sworn Statements.* Both Plaintiffs swore in their interrogatory answers that each "regularly worked approximately 48 hours per workweek" for approximately 25 workweeks. SMF ¶ 13. The arithmetic of that representation yields approximately 200 overtime hours per Plaintiff, more than double the 84 claimed. SMF ¶ 44. Esnol confirmed the inconsistency at deposition and offered no explanation. *Id.*

*Acceptance of Paychecks Without Protest.* Plaintiffs accepted approximately 26 paychecks each over the six months of the project, every one signed by Melo and reflecting 40 hours and no overtime. SMF ¶ 21. Despite JGH's testimony that he noticed the alleged underpayment in the very first week, neither Plaintiff complained, requested correction, or raised the issue with anyone at Statewide for the duration of the project. SMF ¶¶ 26, 50–51.

The week-by-week comparison of Plaintiffs' sworn locations of overtime work to the locations recorded in the "412034 Hours" spreadsheet is set forth in Table 1 below. The week-by-week comparison of Plaintiffs' claimed hours to cumulative SunPass toll-to-toll vehicle time is set forth in Table 2 below.

**Table 1: Comparison of Claimed Locations of Overtime Work With Locations Recorded in the "412034 Hours" Spreadsheet**

| Workweek | Claimed Location | Actual Location Per Statewide's Records |
|---|---|---|
| Apr. 17–20, 2023 | Allapattah | Santa Clara |
| Apr. 24–27, 2023 | Allapattah | Santa Clara |
| May 8–11, 2023 | Santa Clara | Not working (testing performed by C. Novoa) |
| May 15–18, 2023 | Santa Clara | Not working ("NO WORK" week) |
| May 22–25, 2023 | Santa Clara | Gap Tie 2 |

6

| Workweek | Claimed Location | Actual Location Per Statewide's Records |
|---|---|---|
| June 12–15, 2023 | Culmer | Gap Tie 2 |
| June 19–22, 2023 | Culmer | Gap Tie 2 |
| June 26–29, 2023 | Culmer | Culmer |
| July 17–20, 2023 | Gap Tie 2 | Culmer |
| July 24–27, 2023 | Gap Tie 2 | Culmer |
| Aug. 21–24, 2023 | Overtown | Overtown |
| Aug. 28–31, 2023 | Overtown | Overtown |
| Sept. 11–14, 2023 | Brickell | Brickell |
| Sept. 18–21, 2023 | Brickell | Brickell |
| Sept. 25–28, 2023 | Brickell | Brickell |

The "Actual Location Per Statewide's Records" column reflects the principal location at which the spreadsheet records JGH and Esnol working in the corresponding workweek. Ex. C, JGH Ans. to Rogs. No. 13; Ex. D, Esnol Ans. to Rogs. No. 13; Ex. F, 412034 Hours Spreadsheet.

**Table 2: Comparison of Claimed Hours With Cumulative SunPass Toll-to-Toll Vehicle Time**

| Workweek | Hours Claimed | SunPass Toll-to-Toll Hours |
|---|---|---|
| Allapattah Week 1 (Apr. 17–20, 2023) | 48 | 39.35 |
| Allapattah Week 2 (Apr. 24–27, 2023) | 48 | 33.41 |
| Santa Clara Week 1 (May 8–11, 2023) | 46 | 0.00 |
| Santa Clara Week 2 (May 15–18, 2023) | 46 | 0.00 |
| Santa Clara Week 3 (May 22–25, 2023) | 48 | 22.73 |
| Culmer Week 1 (June 12–15, 2023) | 46 | 40.71 |
| Culmer Week 2 (June 19–22, 2023) | 48 | 39.21 |
| Culmer Week 3 (June 26–29, 2023) | 50 | 41.58 |

| Workweek | Hours Claimed | SunPass Toll-to-Toll Hours |
|---|---|---|
| Gap Tie 2 Week 1 (July 17–20, 2023) | 44 | 38.22 |
| Gap Tie 2 Week 2 (July 24–27, 2023) | 44 | 31.33 |
| Overtown Week 1 (Aug. 21–24, 2023) | 44 | 19.33 |

The toll-to-toll figures reflect only days on which both a morning eastbound and evening westbound toll were recorded. Ex. C, JGH Ans. to Rogs. No. 13; Ex. D, Esnol Ans. to Rogs. No. 13; Ex. L, Statewide SunPass Toll Records (Apr. 3 to July 1, 2023); Ex. M, Statewide SunPass Toll Records (July 2 to Aug. 29, 2023).

## STANDARD OF REVIEW

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Evidence that is "merely colorable" or "not significantly probative" cannot defeat summary judgment, *id.* at 249–50, and a party may not rely on conclusory allegations or unsupported factual assertions to do so, *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005).

## ARGUMENT

I.    **PLAINTIFFS CANNOT SATISFY THE THRESHOLD ANDERSON BURDEN.**

A.  **The threshold liability question is governed by the ordinary Rule 56 standard.**

Two independent doctrinal grounds compel the conclusion that Plaintiffs must satisfy the ordinary Rule 56 standard on the threshold liability question. First, even where *Anderson*'s relaxed evidentiary framework applies, it governs only the amount of damages, not the antecedent question whether overtime was worked at all. Second, *Anderson* does not apply here in any event because

Statewide maintained adequate contemporaneous records. Either ground is independently sufficient.

### 1. *Even where Anderson applies, its relaxed standard governs only damages, not threshold liability.*

*Anderson* permits an FLSA plaintiff who has already proven liability to recover damages "as a matter of just and reasonable inference" where the employer's failure to keep adequate records prevents precise quantification. 328 U.S. at 687–88. The relaxed standard applies only at the damages stage. The threshold question whether the plaintiff worked any uncompensated overtime at all must be proven by ordinary evidence sufficient to satisfy Rule 56.

The Sixth, Seventh, and Eighth Circuits have all expressly so held. *Carmody v. Kansas City Bd. of Police Comm'rs*, 713 F.3d 401, 406–07 (8th Cir. 2013) ("*Anderson* only applies where the existence of damages is certain" and "allows uncertainty only for the amount of damages"); *Viet v. Le*, 951 F.3d 818, 822–23 (6th Cir. 2020) (relaxed standard applies "only to the amount of damages, not to the threshold question whether the plaintiff worked overtime at all"); *Osborn v. JAB Mgmt. Servs., Inc.*, 126 F.4th 1250, 1256–57 (7th Cir. 2025) (the "just and reasonable inference" standard "applies to damages questions only after an employee has met the initial burden to establish liability" and "does not apply to the employee's threshold burden of proving a violation of the FLSA").

The Eleventh Circuit's own decisions are consistent. *Jenkins v. S. David Anton, PA*, 922 F.3d 1257, 1270–71 (11th Cir. 2019) (*Anderson* framework triggered only "if [the employee] proves that he has in fact performed work for which he was improperly compensated"); *Jarmon v. Vinson Guard Servs., Inc.*, 488 F. App'x 454, 458 (11th Cir. 2012) ("nothing in *Anderson*" requires the factfinder to accept an FLSA plaintiff's assertion of unpaid overtime hours, even where the

employer's records are disputed). Plaintiffs accordingly bear the initial burden of producing Rule 56 evidence sufficient to permit a reasonable factfinder to conclude they worked any uncompensated overtime at all.

### 2. *Anderson does not apply here in any event because Statewide maintained adequate records.*

The Eleventh Circuit applies *Anderson*'s burden-shifting framework only "in situations where the employer's records cannot be trusted and the employee lacks documentation." *Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1316 (11th Cir. 2007). Where the employer maintains accurate and adequate contemporaneous records, the relaxed standard never engages.

Statewide maintained four such layers of records. SMF ¶¶ 15–24; *see supra* Statement of Facts. The Certified Payroll Reports filed weekly with Miami-Dade County through the LCP Tracker system are particularly probative of adequacy. They were not internal Statewide documents. They were filed under penalty of perjury as a condition of Statewide's continued participation in the federally-funded Metrorail project, and any false statement contained in them exposed the signatory to federal criminal liability under 18 U.S.C. § 1001.

Plaintiffs' theory of the case thus requires the Court to infer that Melo and Statewide systematically falsified federally-monitored compliance reports across thirty consecutive weekly filings to suppress 84 overtime hours per Plaintiff, total project wages of approximately $12,700, in exchange for the risk of federal criminal prosecution and debarment from public-works contracting. That implausibility, combined with the redundant character of the four record systems and the independent electronic verification supplied by SunPass, defeats any contention that Statewide's records "cannot be trusted" within the meaning of *Allen*.

10

A plaintiff cannot trigger *Anderson*'s relaxed standard by self-serving assertion alone; the trigger requires a factual showing that the employer's records are actually unreliable. Plaintiffs have offered no such showing. Their Rule 26(a) Disclosure assertion that Statewide's records are "absent" or inaccurate, SMF ¶ 14, is contradicted on its face by the four-record stack Statewide produced, by the LCP Tracker filings on file with the County, and by Plaintiffs' own acceptance of approximately 26 paychecks each over the project period without complaint. SMF ¶¶ 21, 50–51.

### B. Plaintiffs' evidence fails the ordinary Rule 56 standard.

Plaintiffs' evidence fails on every doctrinal ground the case law has articulated for granting summary judgment to the employer in an FLSA case. Their claims are flatly refuted by objective records, internally inconsistent with their own sworn admissions, and devoid of the specific facts about specific days and hours required to permit any reasonable inference in their favor.

### 1. *The SunPass toll records flatly refute Plaintiffs' overtime claims as a matter of arithmetic.*

The SunPass toll records constitute objective electronic evidence of the maximum window during which the company vehicle JGH used to commute could have been on Florida toll roads on any given workday. SMF ¶¶ 22–23. Plaintiffs themselves swore that during the project they worked the 4×10 Schedule and that the commute from JGH's residence to the jobsite took approximately twenty minutes each way. SMF ¶¶ 53–54. JGH used the company vehicle to commute to and from the jobsite, with Esnol as his passenger, on every workday on which they performed work. SMF ¶ 22.

On Plaintiffs' own admissions about their schedule and commute, a fully-completed workweek would require 42 hours and 40 minutes of cumulative toll-to-toll vehicle time merely to reflect the 40 compensable hours Plaintiffs were scheduled to work, before any overtime. SMF ¶ 55. The arithmetic is straightforward: four workdays per week, each requiring ten compensable hours plus forty minutes of round-trip commute, equals 42 hours and 40 minutes. No workweek covered by the SunPass records reaches that baseline. *Id.*; *see* Table 2, *supra*. The point holds even after every minute of toll-to-toll vehicle presence is treated as compensable, which the law does not require. *See* 29 U.S.C. § 254(a) (commuting time non-compensable under Portal-to-Portal Act). Even crediting Plaintiffs with zero commute time and treating the entirety of the toll-to-toll window as compensable working time, no workweek reaches even the 40-hour scheduled threshold, much less 40 hours plus the overtime they now claim.

This is not statistical inference, expert reconstruction, or approximation. It is unimpeachable arithmetic derived from objective electronic records and Plaintiffs' own sworn admissions. It "flatly refute[s]" Plaintiffs' overtime claims within the meaning of *Melton v. Tippecanoe County*, 838 F.3d 814, 819 (7th Cir. 2016).

### 2. The "412034 Hours" spreadsheet flatly refutes Plaintiffs' sworn locations of overtime work.

The "412034 Hours" spreadsheet shows that for nine of the ten workweeks Plaintiffs identified in their sworn interrogatory answers as the location of overtime work at the first four stations, JGH and Esnol either were not working at all or were working at a different station entirely. SMF ¶ 52; *see* Table 1, *supra*. Plaintiffs swore to 16 hours of overtime at Allapattah during the workweeks of April 17–20 and April 24–27, 2023, but the spreadsheet shows them performing installation work at Santa Clara every working day during those weeks, with no

Allapattah entries at all. Ex. C, JGH Ans. to Rogs. No. 13; Ex. D, Esnol Ans. to Rogs. No. 13; Ex. F, Hours Spreadsheet. Plaintiffs likewise claim 6 hours of overtime at Santa Clara during the week of May 15–18, 2023, but the spreadsheet expressly records "NO WORK" for that week. *Id.* The spreadsheet does not merely contradict the magnitude of overtime claimed. It contradicts the fact of any work having been performed at the locations Plaintiffs identified.

### 3.  *Plaintiffs' narrative is internally inconsistent and devoid of specific facts.*

Both Plaintiffs swore in their interrogatory answers that each "regularly worked approximately 48 hours per workweek" for approximately 25 workweeks, which yields approximately 200 overtime hours per Plaintiff. SMF ¶¶ 13, 44. Bates 856 asserts only 84. SMF ¶¶ 9–10, 34–35. That is not a discrepancy of degree. It is a doctrinal failure to "specifically account for the hours worked," *Holaway v. Stratasys, Inc.*, 771 F.3d 1057, 1059 (8th Cir. 2014), and creates the precise "internally inconsistent" record that cannot survive summary judgment, *Melton*, 838 F.3d at 819–20. Esnol confirmed the inconsistency at deposition and offered no explanation. SMF ¶ 44.

Plaintiffs likewise cannot supply specific facts about specific days and hours. JGH testified that "right now I don't recall based on my memory what days I worked overtime hours" and confirmed station-by-station that he could not specify dates. SMF ¶ 39. He further testified that his answer to every question about what work caused his overtime would be the word "working." SMF ¶ 38. JGH testified that the 84 hours are "an estimate." SMF ¶ 35. Esnol testified "I don't remember" as to the work that allegedly caused his overtime at every one of the six stations, every week. SMF ¶ 37.

The case law uniformly holds this kind of record insufficient. *Holaway*, 771 F.3d at 1059–60 (affirming summary judgment where plaintiff offered "contradictory and bare assertions" not

13

"tied to specific days and hours worked"); *Viet*, 951 F.3d at 824–25 (affirming summary judgment where plaintiff did not "fill in his general 60-hour estimate with specific facts about his daily schedule," leaving "a jury simply guessing at the number of hours he worked in any given week"); *Osborn*, 126 F.4th at 1256–57 (affirming summary judgment on analogous record); *Turner v. The Saloon, Ltd.*, 595 F.3d 679, 690–91 (7th Cir. 2010) (plaintiff's "mere assertions are insufficient to create a jury issue" against employer's payroll records).

The credibility infirmity is compounded by Plaintiffs' own conduct over the six-month project. They accepted approximately 26 paychecks each, every one reflecting 40 hours and no overtime, signed by Melo and hand-delivered. SMF ¶ 21. JGH testified that he noticed the alleged underpayment during the very first week of work, SMF ¶ 26, yet neither Plaintiff complained, requested correction, or raised the issue with anyone at Statewide for the duration of the project. SMF ¶¶ 50–51. The 4×10 Schedule itself was established at JGH's own request. SMF ¶ 53.

### 4. *Bates 856 cannot create a triable issue.*

The only document Plaintiffs offer in lieu of contemporaneous records is Bates 856, a post-hoc summary not written by either Plaintiff but by JGH's wife in approximately September 2023, after the alleged overtime had been performed and as a precursor to this litigation. SMF ¶¶ 29–31. It contains the names of six Metrorail stations and a single total number of claimed overtime hours next to each station name. SMF ¶ 34. It records no daily start times, no daily stop times, no daily hours worked, and no other day-by-day detail. *Id.*

Bates 856 is also untethered to any preserved source. JGH testified that he kept a personal notebook during the project containing day-by-day, week-by-week, station-by-station detail with "all the numbers for each one of the stations." SMF ¶ 32. After Bates 856 was created, JGH discarded the notebook. *Id.* By his own testimony, the wage dispute had crystallized in his mind

14

months earlier, in mid-April 2023. SMF ¶ 26. The destruction was therefore an intentional disposal of the only contemporaneous documentary evidence concerning the very wage dispute he now seeks to litigate. Whether or not the Court finds the destruction warrants a formal adverse inference under *Mann v. Taser International, Inc.*, 588 F.3d 1291, 1310 (11th Cir. 2009), the fact of intentional destruction of contemporaneous records by the party with the burden of proof on the threshold question fatally undermines the credibility of any inference Plaintiffs ask the factfinder to draw from the surviving Bates 856 summary.

The format of Bates 856 is itself irreconcilable with JGH's own testimony about the destroyed notes. He testified that the notes contained day-by-day, week-by-week, station-by-station detail. SMF ¶ 32. Bates 856 contains six station names and six total figures. SMF ¶ 34. A summary that strips away all of the granular detail of its purported source is not a summary; it is a litigation-prepared estimate untethered to anything in the record. *See Hubbard v. Willow Wood Nursing Ctr., Inc.*, No. 1:17-cv-03076, 2019 WL 13211606 (N.D. Ga. Dec. 30, 2019) (litigation-prepared "extensive charts" insufficient where "[n]othing tie[d] those figures to anything of substance in the record").

* * *

There is no record evidence from which a reasonable factfinder could conclude that Plaintiffs worked any overtime hours at all, let alone the 84 hours each they claim. Their recollections are flatly refuted by employer records. Their narrative is internally inconsistent with their own sworn admissions. They cannot supply specific facts about specific days and hours. The lead Plaintiff intentionally destroyed the only purported contemporaneous source material after the wage dispute he had identified in the very first week of work had already crystallized. And the post-hoc summary they offer in lieu of contemporaneous records is the kind of unsupported

15

litigation-prepared chart the case law uniformly rejects. Defendants are entitled to summary judgment.

<h2 style="text-align:center">CONCLUSION</h2>

For the reasons set forth above, Defendants Statewide Electrical Services, Inc. and Noel Melo respectfully request that this Court grant summary judgment in their favor on all of Plaintiffs' claims, dismiss the Complaint with prejudice, and grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

**STEPHEN R. VERBIT, P.A.**
Counsel for Defendants
6741 Orange Drive
Davie, Florida 33314
Tel: (954) 965-8350
Email: sverbit@verbitlawfl.com

By: /s/ Stephen R. Verbit
Stephen R. Verbit, Esq.
Florida Bar No. 710857

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 6th day of May 2026, I served a true and correct copy of the foregoing by the CM/ECF system and by email to the following: Brian H. Pollock, Esq., Counsel for Plaintiffs, FAIRLAW Firm, 135 San Lorenzo Avenue, Suite 770, Coral Gables, Florida 33146, Email: brian@fairlawattorney.com.


By: /s/ Stephen R. Verbit
Stephen R. Verbit, Esq.

17