UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:25-CV-22530-BECERRA/TORRES

JESUS E. GONZALEZ HERNANDEZ,

      Plaintiff,

vs.

STATEWIDE ELECTRICAL SERVICES, INC.
and NOEL MELO,

      Defendants.

_____/

### **PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiffs Jesus E. Gonzalez Hernandez ("JGH") and Esnol Alejandro Gonzalez Cantero ("Esnol") (collectively, "Plaintiffs") respectfully submit this Response in opposition to Defendants' Motion for Summary Judgment [ECF No. 34]. For the reasons set forth below, genuine disputes of material fact preclude summary judgment on every issue Defendants raise. The Motion should be denied.

### **INTRODUCTION**

Defendants ask this Court to accept their own records as conclusive proof that Plaintiffs never worked more than forty hours in any workweek. But that argument collapses under the weight of Defendants' own admissions.

Three admissions from Noel Melo's deposition alone preclude summary judgment. First, Melo admitted he *decided* from the outset, before ever monitoring Stations 2 through 6, that the project would take exactly 40 hours per week per station because all stations were "typical." "Since all the stations were the same type, I decided that we were able to do the project within 40 hours

every week, for four weeks. So, that's why we always mentioned 40 hours a week, four weeks, because it was what I decided when I was in Allapattah doing the first station." [ECF No. 33-1, P. 28:14-23]. A reasonable jury could conclude these records reflected predetermined assumptions, not contemporaneous measurement of actual hours worked.

Second, Melo admitted he "rounded off" to 40 hours as a "good faith" gesture even when SunPass data showed Plaintiffs had worked *less* than that. Melo testified: "we can go back and see they actually work less than 10 hours every day, according to this record that I can now pacify . . . I decided as a good faith because they were doing a good job to round it off." [ECF No. 33-1, P. 33:12-15]. An employer who freely admits adjusting time records based on "good faith" rather than actual observation has no basis to claim those records are precise.

Third, Melo admitted that for Stations 2 through 6, his timesheets were based on hours that Plaintiffs allegedly communicated verbally to Paola Usuga, Defendants' Secretary / "Project Manager," who then verbally relayed them to Melo, with no written record of either communication at any step. [ECF No. 33-1, Pgs. 38:6-12, 49:8-13, 51:20-22, 52:14-18]. Plaintiffs directly deny ever reporting their hours to Usuga or anyone else. [ECF No. 33-10, Pgs. 36:21-23, 55:9-12, 74:8-21, 87:1-3, 88:10-11]; [ECF No. 33-11, Pgs. 49:8-10, 49:11-20, 52:3-18].

Beyond these admissions, several additional facts underscore the unreliability of Defendants' records. The Certified Payroll Reports ("CPRs") filed with Miami-Dade County under penalty of perjury list Angel Vaillant - a warehouse helper whom both Melo and Usuga confirmed never performed electrical work at any station - for 243 hours, and list Melo himself for 555 hours under a "Foreman" classification that his own testimony makes impossible. Miami-Dade County required third-party escorts to be present at the job sites throughout each workday, yet Defendants never asked those escorts to verify a single hour. Defendants also assigned a project

designed for a crew of four to just two workers, creating the very conditions that drove overtime. And Defendants have a documented prior history of allegedly failing to pay overtime, having previously been sued by another employee for the same conduct.

On this record, Defendants cannot obtain summary judgment. The Motion should be denied.

## STATEMENT OF MATERIAL FACTS

Plaintiffs incorporate by reference their Statement of Material Facts in Support of this Response to Defendants' Motion for Summary Judgment ("PSMF"), filed contemporaneously herewith, which sets forth the genuine disputes of material fact that preclude summary judgment.

## SUMMARY JUDGEMENT STANDARD

Summary judgment may only be granted when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56. All evidence and factual inferences must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Rojas v. Florida*, 285 F.3d 1339, 1341-42 (11th Cir. 2002).

The Court cannot weigh the competing facts at the summary stage and instead must deny summary judgment: "It is not this Court's function to weigh the facts and decide the truth of the matter at summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, where there are 'varying accounts of what happened,' the proper standard requires us to adopt the account most favorable to the non-movants. *Perez v. Suszczynski*, 809 F.3d 1213, 1217 (11th Cir. 2016)." *Smith v. LePage*, 834 F.3d 1285, 1296 (11th Cir. 2016).

The Court does not make credibility determinations at the summary judgment stage because only the jury can make them. *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1252 (11th Cir. 2013). When the record reveals disputed factual issues, the Court must deny summary judgment and allow the jury to resolve them. *Environmental Def. Fund v. Marsh*, 651 F.2d 983, 991 (5th Cir. 1981). The Court must resolve all ambiguities and draw all justifiable inferences in Plaintiffs' favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## ARGUMENT

### I.   PLAINTIFFS HAVE SATISFIED THEIR EVIDENTIARY BURDEN AND THE RECORD ESTABLISHES GENUINE ISSUES OF MATERIAL FACT.

Defendants' Motion fails on both grounds they assert. First, *Anderson*'s burden-shifting framework applies because Defendants did not maintain adequate contemporaneous records. Second, even under the ordinary Rule 56 standard, Plaintiffs have produced evidence sufficient to permit a reasonable factfinder to conclude they worked uncompensated overtime. Either conclusion independently requires denial of summary judgment.

### A.   *Anderson*'s Burden-Shifting Framework Applies Because Defendants Did Not Maintain Adequate Contemporaneous Records.

#### 1.   *Anderson's* framework applies where the employer's records cannot be trusted.

*Anderson v. Mt. Clemens Pottery Co.* establishes the evidentiary framework that applies when an employer fails to maintain the time records required by the FLSA. Under that framework, once an employee produces "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference," the burden shifts to the employer to "come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness

of the inference to be drawn from the employee's evidence." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88, 66 S. Ct. 1187, 1192 (1946).

Defendants ask this Court to give preclusive effect to their own records, the inaccuracy of which serves as the very basis of this lawsuit. The Eleventh Circuit will not permit that result. The Eleventh Circuit applies *Anderson*'s framework "in situations where the employer's records cannot be trusted and the employee lacks documentation." *Allen v. Bd. of Pub. Educ.*, 495 F.3d 1306, 1316 (11th Cir. 2007). As demonstrated below, that is precisely this case. Plaintiffs have produced sworn interrogatory responses, a handwritten summary identifying overtime by station and week, and corroborating testimony from both Plaintiffs who worked side-by-side throughout the project. [See ECF No. 33-8]; [See ECF No. 33-3, Nos. 2, 4, 13]; [See ECF No. 33-4, Nos. 2, 4, 13]. That evidence is sufficient to show the amount and extent of Plaintiffs' overtime work as a matter of just and reasonable inference. *Anderson*, 328 U.S. at 687-88.

Defendants' reliance on out-of-circuit decisions holding that *Anderson* governs only damages ignores that the Eleventh Circuit has not adopted that limitation. *Jenkins v. Anton*, 922 F.3d 1257, 1270-71 (11th Cir. 2019); *Jarmon v. Vinson Guard Servs.*, 488 F. App'x 454, 457-58 (11th Cir. 2012). Whether analyzed as a threshold liability question or a damages question, Plaintiffs have produced the evidence *Anderson* requires.

### 2. Defendants' records do not satisfy the adequacy standard required to foreclose *Anderson*'s application.

Defendants call their timekeeping system "four independent layers" of contemporaneous records. The record tells a different story: all four purported layers trace to a single source - Melo's own unverified handwritten notes - making them a single-source verbal chain dressed up as

corroborating documentation. *Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299, 1315 (11th Cir. 2013).

No independent timekeeping existed. Melo admitted, individually and as corporate representative of Statewide, that Statewide had no written timekeeping policy beyond a general reference to FLSA regulations, used no time clock of any kind, and used no electronic timekeeping software. [ECF No. 33-1, Pgs. 32:5-18, 58:14-25, 59:1-12, 60:21-24]. Critically, Melo admitted there was no written requirement that Plaintiffs record their start or stop times, and that Plaintiffs were not required to sign any timesheet to verify the accuracy of the hours recorded. [ECF No. 33-1, Pgs. 32:19-22, 113:9-11].

The timesheets were second-hand verbal records, not contemporaneous observation. Melo prepared his handwritten timesheets in his office based on verbal reports from Usuga, who allegedly received verbal reports from Plaintiffs each day, with no written intermediary records at any step. [ECF No. 33-1, Pgs. 27:10-14; 51:17-22; 52:14-18]. Melo admitted: "I was acting in good faith. I was taking the information they were providing us, and I didn't have a reason to believe they were lying to us at that time." [ECF No. 33-1, P. 69:14-19]. The timesheets thus record second-hand verbal information, not independent observation, and contain no verification of any kind.

Paola Usuga lacked any practical ability to independently verify Plaintiffs' hours worked. Usuga's regular schedule was 8:00 a.m. to 4:30 p.m. [ECF No. 33-7, P. 31:12-15], while Plaintiffs typically arrived at the worksite by 5:30–6:00 a.m. and worked past 5:00 p.m. [ECF No. 33-3, No. 6(a-b)]; [ECF No. 33-4, No. 6(a-b)]. Usuga confirmed she was never present when Plaintiffs arrived in the morning - "No, no, no" - and was present only "few times, very few times" when they left. [ECF No. 33-7, P. 42:14-18]. When asked how Usuga could verify Plaintiffs' start and stop times

given that gap, Melo responded that he did not use the word "verify" and that the company relied on Plaintiffs' own verbal reports. [ECF No. 33-1, Pgs. 88:20-25; 89:4-8]. Usuga received no training on timekeeping requirements from Melo, and neither ever consulted an attorney or the Department of Labor regarding proper timekeeping methods or FLSA compliance. [ECF No. 33-1, Pgs. 108:25–109:6]; [ECF No. 33-7, P. 96:1-20].

Independent witnesses existed, and Defendants never used them. Miami-Dade County required on-site escorts to be present at the job sites throughout the entire workday. [ECF No. 33-1, P. 30:16-18y]; [ECF No. 33-7, P. 21:20-21]; [ECF No. 33-11, Pgs. 25:2-4, 57:21-58:3]. Usuga admitted that the sole method of verifying hours was Plaintiffs' own verbal reports to her, and that she never asked the escorts, who were present during the entire shift, to verify the hours Plaintiffs worked. [ECF No. 33-7, Pgs. 64:3-16]. These escorts were neutral third parties who observed Plaintiffs' entire workday, yet Defendants chose to ignore them entirely and rely instead on a verbal chain from Melo's office.

The CPRs contain demonstrably false entries. The certified payroll reports filed under penalty of perjury with Miami-Dade County confirm that the records cannot be trusted. The CPRs list "Angel Vaillant" working 243 hours on the project as an "Electrical Worker/Electrician-Wireman." [ECF No. 33-5]. Yet Usuga testified that only Jesus and Esnol were at the stations: "No, just Jesus and Esnol. Jesus and Esnol were the only ones in the station." [ECF No. 33-7, Pgs. 80:1-2, 80:14-20]. Melo himself admitted that Angel Vaillant "was never part of this project at all" and was not qualified to be an electrician; his duties were "like a helper," involving warehouse work and materials runs. [ECF No. 33-1, Pgs. 93:11-17, 95:6-8]. Notably, Usuga also disclosed that Angel Vaillant is her stepfather. [ECF No. 33-7, P. 76:10-11].

The CPRs also list Melo himself for 555 hours as an "Electrical Worker/Foreman." [ECF No. 33-5]. But Melo admitted he was physically present only at Station 1 on a regular basis, and that his presence at Stations 2 through 6 was "from time to time," adding that his own time records are "not registered anywhere because I'm the owner, and I'm not forced to provide my time to anyone, not even the LCPtracker." [ECF No. 33-1, Pgs. 99:21-25]. Moreover, the "Foreman" classification on the CPRs is expressly defined as applicable to "jobs where 3-9 electricians are employed," yet the undisputed record establishes that only two electricians - the Plaintiffs - were assigned to this project throughout its entire duration. [ECF No. 33-5]; [ECF No. 33-3, No. 6(d)]; [ECF No. 33-4, No. 6(d)]. The Foreman classification was both factually unsupported and internally inconsistent with Defendants' own admissions. When asked whether the CPR entries accurately reflected his hours, Melo declined to use the word "accurately," stating: "This is the time that I reported that I worked in that project. I'm not obligated to have a time clock and see the clock and determine how many hours." [ECF No. 33-1, Pgs. 133:13-135:12].

3. **Defendants' invocation of federal criminal liability does not establish the CPRs' accuracy - it confirms they are the product of the self-interest they invoke.**

Defendants argue that because the CPRs were signed under penalty of perjury and any false statement exposed Melo to federal criminal liability under 18 U.S.C. § 1001, no reasonable factfinder could conclude the records were falsified. [ECF No. 34, at 2, 10]. This argument is circular and collapses under its own weight.

The CPRs are sworn to by Noel Melo - the same person who controlled all of the underlying data, who admitted he had no independent verification procedure, who conceded he rounded hours to 40 "as a good faith" gesture regardless of actual time worked, and who declined to use the word "accurately" when asked whether his own CPR entries were accurate. [ECF No.

33-1, Pgs. 133:13-135:12]. The fact that Melo swore to a document he created and controlled does not transform it into objective evidence. Every false statement sworn under penalty of perjury is, by definition, sworn under penalty of perjury. The oath is a legal requirement, not a guarantee of truth. Melo's willingness to sign these reports tells us only that he signed them, not that they are accurate.

More fundamentally, the argument proves too much. The very CPRs Defendants hold up as "particularly probative" of accuracy list Angel Vaillant, Usuga's own stepfather, for 243 hours of electrical work that both Melo and Usuga admit he never performed, [ECF No. 33-1, Pgs. 93:11-17, 95:6-8]; [ECF No. 33-7, Pgs. 80:14-20, 83:6-7], and list Melo himself for 555 hours under a Foreman classification that his own testimony renders impossible. [ECF No. 33-1, Pgs. 99:21-25]; [ECF No. 33-5]. If the threat of federal criminal prosecution were sufficient to guarantee accuracy, these entries would not exist. Their existence demonstrates precisely the opposite: that Melo was willing to sign and submit materially false information under the same penalty-of-perjury certification he now asks this Court to treat as conclusive. The jury, not this Court, must decide what weight to give a certification signed by the person whose credibility is at the center of this dispute.

Documents containing admitted false entries and job position titles cannot be trusted to accurately reflect hours worked. *Allen v. Bd. of Pub. Educ.*, 495 F.3d 1306, 1316 (11th Cir. 2007). If Defendants' certified payrolls are unreliable with respect to who was working, a reasonable factfinder could equally conclude they are unreliable with respect to how many hours were worked. The four purported "record layers" all trace to the same deficient verbal-reporting chain, none was verified by independent observation, and the most prominent layer contains disputed entries fabricated from whole cloth. *Anderson*'s burden-shifting framework therefore applies, and

Defendants have not met their burden to negate the reasonable inference arising from Plaintiffs' evidence.

**B.   Plaintiffs' Evidence Satisfies Any Applicable Evidentiary Standard and Creates Genuine Issues of Material Fact.**

Even setting aside *Anderson*, Plaintiffs have produced competent evidence - sworn interrogatory answers, station-by-station hour breakdowns, a contemporaneous-records-based summary, corroborating testimony from both Plaintiffs, and admissions from Defendants' own project manager - sufficient to create genuine disputes of material fact under any standard.

**1.   The SunPass Toll Records Do Not Refute Plaintiffs' Overtime Claims.**

Defendants present their SunPass arithmetic as "unimpeachable." It is not.

The SunPass records cover only two periods: April 3 through July 1, 2023, and July 2 through August 29, 2023. [See ECF No. 33, at ¶¶ 4-5]; [ECF No. 33-12]; [ECF No. 33-13]. The company vehicle was taken to Palmetto Ford on September 1, 2023, after which Plaintiffs no longer used the company truck. [ECF No. 33-1, P. 68:1-18]. After that date, JGH commuted using his personal vehicle. [ECF No. 33-10, P. 58:19-24]. The SunPass records, therefore, do not cover the final four overtime weeks of the project: the three Brickell weeks (September 11-14, September 18-21, and September 25-28, 2023) and the second Overtown week (August 28-31, 2023). Records that do not address those weeks cannot "flatly refute" the overtime claims arising from them. *Centeno v. I&C Earthmovers Corp.*, 970 F. Supp. 2d 1280, 1288-89 (S.D. Fla. 2013).

Even for the weeks the SunPass records do cover, toll data captures only when the company vehicle passed through a toll plaza, not the total time Plaintiffs spent performing electrical work at the stations. JGH testified that he did not always take the expressway: "Not always did I take - I didn't always take the expressway. Sometimes I would go using the . . . side streets." [ECF No. 33-

10, P. 60:4-7]. On any day JGH used a non-toll route, the SunPass generates zero entries, yet that does not mean zero work was performed. The toll-to-toll interval is, at best, a partial snapshot of travel activity, not a measure of compensable work time.

### 2. The "412034 Hours" Spreadsheet Does Not Establish the Accuracy of Defendants' Claimed Work Locations

Defendants argue the "412034 Hours" spreadsheet shows Plaintiffs were at different stations than they claim during nine of ten overtime weeks. The spreadsheet cannot bear that weight.

First, the spreadsheet suffers from the same reliability concerns as all of Defendants' other time records: it was created by Melo in his office based on the same unverified verbal-reporting chain allegedly relayed through Paola Usuga, with no independent source outside of Melo's own handwritten notes. [ECF No. 33-1, P. 27:11-14]. Second, it was disclosed for the first time one hour before Melo's deposition, depriving Plaintiffs of any meaningful opportunity to analyze the document or question Defendants regarding its preparation and underlying data. [ECF No. 33-1]; [ECF No. 28]. Third, the CPRs, the most prominent component of Defendants' four-layer system, contain indisputably false entries about who was working on the project. A reasonable factfinder confronted with disputed personnel entries in the certified payroll records that are part of the same recordkeeping system as the spreadsheet could reasonably question the reliability of the spreadsheet's reported work locations. *Allen v. Bd. of Pub. Educ.*, 495 F.3d 1306, 1316-17 (11th Cir. 2007).

Furthermore, Defendants' own Table 1 confirms that at the last two stations, Overtown (August 21-24 and August 28-31, 2023) and Brickell (September 11-14, September 18-21, and September 25-28, 2023), the spreadsheet's recorded locations match Plaintiffs' claimed locations.

[See ECF No. 34, Table 1]. The spreadsheet, therefore, does not independently refute Plaintiffs' overtime claims for those weeks. And even as to the earlier station weeks where location discrepancies exist, a factual dispute about the precise station assignment for a given week does not eliminate the separate question of whether overtime work occurred during that period.

### 3. Plaintiffs' Testimony is Consistent and Provides Specific Facts Supporting Their Overtime Claims.

Defendants assert that Plaintiffs' narrative is "internally inconsistent and devoid of specific facts." The record demonstrates otherwise.

Plaintiffs have provided a complete, station-by-station, week-by-week accounting of their overtime: approximately 16 hours of unpaid overtime at Allapattah (weeks of April 17-20 and April 24-27, 2023); approximately 20 hours at Santa Clara (weeks of May 8-11, May 15-18, and May 22-25, 2023); approximately 24 hours at Culmer (weeks of June 12-15, June 19-22, and June 26-29, 2023); approximately 8 hours at Gap Tie 2 (weeks of July 17-20 and July 24-27, 2023); approximately 8 hours at Overtown (weeks of August 21-24 and August 28-31, 2023); and approximately 8 hours at Brickell (weeks of September 11-14, September 18-21, and September 25-28, 2023), for a total of approximately 84 overtime hours. [ECF No. 33-3, No. 13]; [ECF No. 33-4, No. 13]; [ECF No. 33-8]; [ECF No. 33-10, Pgs. 49:10-50:25, 51:1-6].

The centerpiece of Defendants' inconsistency argument is the difference between Plaintiffs' statement that they "regularly worked approximately 48 hours per workweek" and their claim of 84 total overtime hours. That is not an inconsistency. The project ran from April 17 through September 28, 2023, approximately 23 workweeks. A claim of overtime in 15 of those weeks is entirely consistent with having "regularly" worked approximately 48 hours when overtime occurred, because not every week required overtime.

Both Plaintiffs independently provided identical station-by-station, week-by-week figures. That consistency is directly explained by the undisputed fact that they always worked the same schedule, at the same stations, every day of the project. Esnol testified that he and his father "always" worked the same hours, "100 percent," and that "[n]o days I remember working different hours than my father." [ECF No. 33-11, Pgs. 49:21-23]. Project manager Paola Usuga independently confirmed that "Jesus and Esnol always worked the same hours." [ECF No. 33-7, P. 65:9-11]. Two workers who were physically together at every station during every shift naturally report identical hours. That consistency is corroboration, not fabrication.

The record also contains specific, concrete evidence of Defendants' knowledge of the overtime. Noel Melo told Plaintiffs at one of the stations that there was no money available to compensate for additional hours worked. [ECF No. 33-11, Pgs. 52:15-17]. On or about May 25, 2023, at Station 2 (Santa Clara), Usuga told Plaintiffs that the work had to be completed in 20 hours, and that if they exceeded 20 hours, they would not be paid for that week but would instead be compensated later with time off - a promise that was never honored. [ECF No. 33-3, No. 6(f)]; [ECF No. 33-4, No. 6(f)]. Paola Usuga's own deposition testimony references "20 hours from Santa Clara . . . pending" - a reference to unpaid overtime hours at the very station Defendants claim involved no overtime. [ECF No. 33-7, Pgs. 87:21-89:9, 90:18-21, 91:4-12, 92:22-25]. Esnol testified: "She 100 percent knew that we worked extra hours." [ECF No. 33-11, P. 31:8-9].

Context matters, too. The Miami-Dade Metrorail project was designed for a crew of four workers, but only JGH and Esnol were assigned to complete the work, requiring them to work substantially more hours per station. [ECF No. 33-3, No. 6(d)]; [ECF No. 33-4, No. 6(d)]. JGH testified that overtime resulted because "the work in each station got complicated. Each station wasn't the same. . . . It was unpredictable." [ECF No. 33-10, P. 67:15-23]. Defendants chose to

staff a four-person project with two workers, and then claim they are surprised that those two workers claim overtime. The credibility determination Defendants ask this Court to make is precisely the kind reserved for the jury.

### 4. Bates 856 Creates a Genuine Triable Issue of Fact.

Defendants dismiss Bates 856 as a "post-hoc summary" created as a "precursor to litigation." The summary judgment record does not support that characterization.

Bates 856 was prepared by JGH's wife, Maritza, using station and work records Plaintiffs maintained during the project. [ECF No. 33, ¶¶ 28-32]. Although this action was filed on June 3, 2025, the document was prepared from records and information maintained during the project itself. [ECF No. 33-10, P. 39:5-9]. JGH discarded the underlying daily and weekly records him and Esnol referred to while his wife prepared the summary. This occurred before litigation was commenced. JGH had no obligation to preserve documents before any litigation was reasonably anticipated. *Managed Care Sols., Inc. v. Essent Healthcare, Inc.*, 736 F. Supp. 2d 1317, 1324 (S.D. Fla. 2010).

The summary itself is specific: it lists six Metrorail station names with total overtime hours per station, includes references to a calendar next to the Santa Clara and Gap Tie 2 entries, and contains an explanatory note stating that "[u]nloading the equipment at each station[,] [Plaintiffs] always worked more than the [10] established hours," identifying equipment unloading as the primary driver of overtime. [ECF No. 33-8]. Both Plaintiffs confirmed the accuracy of those figures in their independent interrogatory responses. [ECF No. 33-3, No. 13]; [ECF No. 33-4, No. 13]. The disposal of the underlying notebook affects the weight the jury may assign to Bates 856, not its admissibility, and not its capacity to create a triable issue.

The FLSA has long permitted employees to prove their hours by reasonable inference based on personal recollection and available documentation when the employer has failed to maintain adequate records. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88, 66 S. Ct. 1187, 1192 (1946). Whether the jury should credit Bates 856 and Plaintiffs' corroborating testimony over Defendants' records, records that Melo admits were not independently verified and that contain false entries, is a classic factual dispute inappropriate for resolution at summary judgment. *Blanco v. Samuel*, 91 F. 4th 1061, 1070 (11th Cir. 2024).

### 5.  Bates 856 Creates a Genuine Triable Issue of Fact.

Defendants have previously been sued for the same conduct by another employee, Yonel Hernandez, for unpaid overtime and wrongful termination. *Hernandez v. Statewide Electrical Services, Inc.*, No. 2019-29508-CA-01 (Fla. 11th Cir. Feb. 6, 2020). Plaintiffs' claims do not arise in a vacuum; they arise against a company with a documented history of allegedly failing to pay overtime to its workers.

### CONCLUSION

The summary judgment record is replete with factual disputes: whether Defendants' records were predetermined rather than contemporaneous; whether it was even possible for Melo or Usaga to verify Plaintiffs' hours worked, which list Usaga's own stepfather for 243 hours of electrical work he never performed, and classify Melo as a "Foreman" for 555 hours under a classification expressly requiring three to nine electricians when only two were ever assigned; whether Defendants ignored available third-party witnesses who could have verified Plaintiffs' hours; and whether Plaintiffs' corroborating, station-specific sworn testimony is credible. Resolving any of these disputes requires exactly the kind of credibility determinations and evidence-weighing that are prohibited at summary judgment.

Because genuine disputes of material fact permeate this record, Defendants' Motion for Summary Judgment should be denied in its entirety.

Respectfully submitted the 20th day of May 2026,

<u>Katelyn Schickman, Esq.</u>
Brian H. Pollock, Esq. (174742)
brian@fairlawattorney.com
Patrick Brooks LaRou (1039018)
brooks@fairlawattorney.com
Katelyn Schickman, Esq. (1064879)
katie@fairlawattorney.com
FAIRLAW FIRM
135 San Lorenzo Avenue, Suite 770
Coral Gables, FL 33146
Tel:     305.230.4884
*Counsel for Plaintiff*

Coral Gables, Florida | Detroit, Michigan
FairLaw Firm