UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:25-cv-22530-JB/Torres

JESUS E. GONZALEZ HERNANDEZ,

     Plaintiff,

v.

STATEWIDE ELECTRICAL SERVICES, INC.
and NOEL MELO,

     Defendants.

_____/

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

Pursuant to Local Rule 7.1(c)(1), Defendants Statewide Electrical Services, Inc. and Noel

Melo submit this reply memorandum in support of their Motion for Summary Judgment [D.E.

34].

**INTRODUCTION**

Plaintiffs' Response leaves dispositive elements of the Motion unaddressed. The Sixth,

Seventh, and Eighth Circuit consensus that *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680

(1946), governs damages and not threshold liability is not substantively engaged. The 42-hour-

40-minute SunPass baseline arithmetic is not disputed. The "NO WORK" and C. Novoa entries

are not addressed. The 200-hour-versus-84-hour discrepancy receives no working reconciliation.

Plaintiffs' CPR false-entries argument isolates two non-party entries and invites inferential

transfer to the JGH and Esnol hours, which *Allen v. Board of Public Education for Bibb County*,

495 F.3d 1306 (11th Cir. 2007), does not authorize and which the four-stream contemporaneous

record system plus independent SunPass verification independently forecloses.

1

## I.   ANDERSON'S RELAXED STANDARD GOVERNS DAMAGES, NOT THRESHOLD LIABILITY.

The Sixth, Seventh, and Eighth Circuits hold that *Anderson*'s burden-shifting framework permits an FLSA plaintiff who has established liability to prove damages by just and reasonable inference, but does not relax the threshold burden of proving uncompensated overtime was performed. *Carmody v. Kansas City Bd. of Police Comm'rs*, 713 F.3d 401, 406 (8th Cir. 2013); *Viet v. Le*, 951 F.3d 818, 822-23 (6th Cir. 2020); *Osborn v. JAB Mgmt. Servs., Inc.*, 126 F.4th 1250, 1256-57 (7th Cir. 2025). Plaintiffs do not substantively engage this consensus or cite any of these decisions.

The Eleventh Circuit is consistent. *Jenkins v. S. David Anton, PA*, 922 F.3d 1257, 1271 (11th Cir. 2019), conditions the *Anderson* framework on threshold proof that the employee "has in fact performed work for which he was improperly compensated." *Jarmon v. Vinson Guard Services, Inc.*, 488 F. App'x 454, 457-58 (11th Cir. 2012), holds that "nothing in *Anderson*" compels acceptance of an FLSA plaintiff's assertion of unpaid overtime even where employer records are deficient.

Plaintiffs' principal response is a two-sentence passage at Response p. 5 asserting that the Eleventh Circuit has not adopted the out-of-circuit limitation, citing *Jenkins* at 1270-71 and *Jarmon* at 457-58. The pages cited say the opposite of what Plaintiffs assert.

*Anderson* protects employees from the difficulty of proving the amount of overtime work where the employer's records are inadequate. It does not relieve them of proving the work was performed in the first place. *Allen v. Board of Public Education for Bibb County*, 495 F.3d 1306, 1316 (11th Cir. 2007), the case Plaintiffs do rely on, confirms the threshold requirement: the employee must prove "that he has in fact performed work for which he was improperly

compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Id.*

Even under the relaxed *Anderson* standard for damages, vague or memory-based estimates fail at summary judgment. *Holaway v. Stratasys, Inc.*, 771 F.3d 1057, 1059-60 (8th Cir. 2014); *Viet*, 951 F.3d at 824-25; *Osborn*, 126 F.4th at 1256-57. Plaintiffs' record is materially weaker. SMF ¶¶ 35, 37-39.

## II.  THE CPR FALSE-ENTRIES ATTACK DOES NOT IMPEACH THE JGH AND ESNOL HOURS ENTRIES.

Plaintiffs claim the CPR entries for Vaillant (243 hours) and Melo (555 hours as Foreman) render the CPRs as "cannot be trusted" under *Allen*, 495 F.3d at 1316. Response at 7-9. The argument fails on four grounds.

First, *Allen*'s "cannot be trusted" inquiry asks whether the records are unreliable as to the plaintiff's hours. *Id.* The CPRs are multi-employee compliance filings in which each employee is reported separately. The CPR entries for JGH and Esnol show 40 hours per week, consistent with the handwritten time sheets, the "412034 Hours" spreadsheet, and the signed paychecks. SMF ¶¶ 15, 17-21. Alleged inaccuracy as to one employee's classification does not transfer to the hours entries of others on the same report. Plaintiffs do not claim that the hours reported for the Vaillant and Foreman entries were inaccurate.

Second, the Vaillant and Foreman entries do not impeach the JGH and Esnol hours. The Vaillant entries reflect off-site project-support work, not absent work. Usuga, the project manager Plaintiffs themselves cite, testified that Vaillant handled "the warehouse, picking up materials, [and] doing the heavy lifting," loading the van Usuga drove to the stations. Ex. G, Usuga Dep. 19:13-24. Asked whether Vaillant worked at the Metrorail stations, Usuga drew the dispositive distinction: "At the station, no. For materials for the station, yes." Id. 75:15-18.

3

Plaintiffs' isolated quotation that "Angel and Noel were not at the station," id. 83:6-7, is consistent with that distinction, not contrary to it. Whether the "Electrical Worker" classification for off-site materials work was correct is a wage-rate question, not an attack on hours worked, and the disputed Foreman classification for Melo turns on a separate trigger keyed to the number of electricians employed.

Third, Plaintiffs' "single source verbal chain" theory (Response at 5-6) fails on three grounds. First, the CPRs are third-party-held records: once transmitted to Miami-Dade County through LCP Tracker, with federal criminal liability under 18 U.S.C. § 1001 attaching to falsification, they are no longer something Statewide can retroactively alter. Second, the SunPass toll data is generated entirely outside Statewide's control; no theory tracing internal records to a "verbal chain" reaches data Statewide did not create. Third, Plaintiffs' attack on Usuga's observation capacity (Response at 6-7) does not advance the theory: the system did not depend on her eyewitness verification of every shift, and Plaintiffs identify no record stream her alleged observation gap could undermine.

Fourth, Plaintiffs' argument that Defendants should have consulted Miami-Dade County's required escorts to verify hours (Response at 7) is not an attack on the reliability of records actually kept. The escorts' function was security and safety oversight, not timekeeping. Nevertheless, Plaintiffs do not explain why they themselves did not ask the escorts, present throughout each shift Plaintiffs say ran over forty hours, to corroborate the overtime they now claim.

## III.   PLAINTIFFS' "THREE ADMISSIONS" FAIL ON THEIR OWN TERMS.

The "rounded off" excerpt cuts in Defendants' favor. Melo testified that for weeks when SunPass showed less than ten hours per day, he rounded recorded hours up to 40 as a good-faith

4

gesture. Ex. A, Melo Dep. 33:8-15. The admission establishes that Melo paid Plaintiffs for hours they did not work. Plaintiffs cannot consistently claim both over-compensation relative to actual hours and under-compensation relative to overtime in the same weeks.

The "decided 40 hours" excerpt is a project-scope estimate, not a timekeeping methodology. Ex. A, Melo Dep. 28:7-23. It has no bearing on the contemporaneous timekeeping that produced the four-record system. The "verbal chain" excerpt, paired with Plaintiffs' denial that they reported their hours to anyone (Response at 2), establishes that Plaintiffs themselves engaged in no contemporaneous reporting on a federally-funded prevailing-wage project for 26 consecutive weeks. That undercuts, rather than supports, their claim that they were working uncompensated overtime they had identified in real time.

Plaintiffs separately rely on Esnol's testimony that, at one of the stations, Melo said "there is no money to pay for extra hours." Ex. K, Esnol Dep. 52:15-17 (Response at 13). On its face, the statement addresses authorization of additional hours, not an admission that uncompensated overtime was performed; it identifies no time, place, or amount and does not displace the contemporaneous records establishing the 40-hour figure.

## IV.   PLAINTIFFS DO NOT DISPUTE THE SUNPASS BASELINE ARITHMETIC.

On Plaintiffs' own sworn admissions about their four-day, ten-hour schedule and twenty-minute commute, a fully-completed 40-hour workweek requires 42 hours and 40 minutes of cumulative toll-to-toll vehicle time. SMF ¶ 55; Motion at 11-12. No workweek in the SunPass production reaches that baseline. Motion at Table 2. Plaintiffs do not dispute the math, do not dispute the predicate inputs (PSMF ¶¶ 53-54), and do not address Table 2.

Plaintiffs offer three points (Response at 10-11). Each fails. As to coverage, the SunPass records cover and refute 72 of the 84 hours claimed. By focusing only on the 12 uncovered hours,

Plaintiffs implicitly concede the 72 hours the SunPass data directly refutes, which constitute the bulk of the claim. As to side streets, JGH testified he used them only "[s]ometimes." Ex. J, JGH Dep. 60:4-7. An indefinite frequency cannot rescue overtime claims the SunPass data otherwise refutes. As to compensable-work-time, the baseline math runs the other way: 42 hours 40 minutes is the minimum vehicle time required to complete a 40-hour scheduled workweek. No workweek reaches it. Plaintiffs' citation to *Centeno v. I&C Earthmovers Corp.*, 970 F. Supp. 2d 1280, 1288-89 (S.D. Fla. 2013), is inapposite. The only records kept in *Centeno* were daily totals lacking clock-in and clock-out times, break periods, or arrival information, rendering them inadequate as to every workweek. Here, Statewide maintained multi-layer contemporaneous records covering every workweek the SunPass production does not directly reach: handwritten daily time sheets with start and stop times, the "412034 Hours" spreadsheet, weekly CPRs filed under penalty of perjury, and independent SunPass toll data.

## V. PLAINTIFFS DO NOT ADDRESS THE "NO WORK" AND C. NOVOA ENTRIES.

For nine of the ten workweeks Plaintiffs identify at Stations 1-4, the contemporaneous "412034 Hours" spreadsheet shows them either not working at all or working at a different station. Motion at Table 1, 12-13. Two weeks are not station mismatches. For the week of May 8-11, 2023, the spreadsheet records testing performed by C. Novoa rather than by Plaintiffs. Ex. F. For the week of May 15-18, 2023, the spreadsheet expressly records "NO WORK." *Id.*

Plaintiffs' Response does not address either entry. It concedes the spreadsheet matches Plaintiffs' claimed locations for Overtown and Brickell (Response at 11-12), and argues only that "a factual dispute about the precise station assignment for a given week does not eliminate the separate question of whether overtime work occurred during that period." Response at 12. The location-mismatch issue is easier to deflect. The fact-of-no-work issue is not. Plaintiffs cannot

claim overtime for a week the spreadsheet contemporaneously recorded "NO WORK," or for a week where the recorded testing was performed by another individual.

## VI.     PLAINTIFFS FAIL TO RECONCILE THE 200-HOUR DISCREPANCY.

Each Plaintiff swore each "regularly worked approximately 48 hours per workweek" for approximately 25 workweeks, implying approximately 200 overtime hours per Plaintiff, more than double the 84 claimed. SMF ¶¶ 13, 44.

Plaintiffs respond that overtime "occurred in 15 of those weeks" and the 48-hour figure represents an approximation only for those qualifying weeks. Response at 12-13. The reconciliation fails on three grounds. First, the natural reading of "regularly worked approximately 48 hours per workweek" is across the workweek period, not selectively across a subset; the answer was not "approximately 48 hours in those weeks in which overtime was performed." Plaintiffs cannot rewrite sworn discovery responses through the Response. Second, the arithmetic does not close: 84 hours divided across 15 qualifying weeks yields 5.6 hours per week and an average of 45.6, not 48. The 2.4-hour deviation is structural, not a rounding artifact. Third, the weekly breakdown itself contradicts the framing: figures range from approximately 42 hours at Brickell to 50 hours at Culmer, with only four of fifteen qualifying weeks reaching exactly 48 hours. The pattern is heterogeneous, not approximately uniform.

## VII.    *ANDERSON* DOES NOT PROTECT EMPLOYEES WHO DESTROY THEIR OWN CONTEMPORANEOUS RECORDS.

Plaintiffs argue that JGH "had no obligation to preserve documents before any litigation was reasonably anticipated," citing *Managed Care Solutions, Inc. v. Essent Healthcare, Inc.*, 736 F. Supp. 2d 1317, 1324 (S.D. Fla. 2010). Response at 14. That case addresses the trigger for the preservation duty under federal discovery rules. The question here is whether a plaintiff who admits keeping contemporaneous notes and then admits destroying them is among the class

*Anderson* protects. <u>JGH's own deposition testimony shows that he anticipated litigation before he destroyed the records.</u> He caused Bates 856 to be prepared in September 2023 because, by his sworn admission, he "knew that [Melo] wasn't going to pay me and that's why I was going to claim all the overtime hours." See Defendants' Reply SMF ¶ 65.

*Anderson*'s relaxed framework exists because an employee cannot be required to produce records the employer was obligated to maintain but failed to keep. 328 U.S. at 687. It does not benefit a plaintiff who kept his own contemporaneous records and deliberately destroyed them after the wage dispute had crystallized. JGH testified he noticed the alleged underpayment in the very first week (SMF ¶ 26); kept a notebook containing day-by-day, week-by-week, station-by-station detail (SMF ¶¶ 28, 32); and discarded it after his wife prepared Bates 856 in September 2023 (SMF ¶¶ 29-32). The destruction occurred months after the wage dispute crystallized. A plaintiff who destroys his own contemporaneous notes during the dispute period he later seeks to litigate cannot invoke *Anderson*'s relaxed standard.

The same reasoning forecloses reliance on Bates 856. Even if admissible, its six station-level totals are derivative of destroyed source material, with no contemporaneous documentary basis for the figures the summary contains. A plaintiff cannot manufacture *Anderson* protection by destroying source records and offering a derivative, format-stripped summary in their place. See *Hubbard v. Willow Wood Nursing Ctr., Inc.*, No. 1:17-cv-03076, 2019 WL 8277248 (N.D. Ga. Dec. 30, 2019).

## VIII.   THE HERNANDEZ PRIOR LAWSUIT IS INADMISSIBLE PROPENSITY EVIDENCE.

Plaintiffs' reference to the prior state-court *Hernandez* lawsuit (Response at 15) is inadmissible propensity evidence under FRE 404(b)(1); a single prior lawsuit never adjudicated

on this record is not "habit" under Rule 406; and any relevance is substantially outweighed by unfair prejudice under Rule 403.

IX.   **PLAINTIFFS' "CREW OF FOUR" ASSERTION IS UNSUPPORTED IN THE RECORD.**

Plaintiffs frame their narrative around the assertion that the Metrorail project "was designed for a crew of four workers, but only JGH and Esnol were assigned to complete the work." Response at 13. The assertion has no record support beyond Plaintiffs' own interrogatory answers, and Esnol's deposition testimony establishes the absence of any factual basis.

Asked who designed the project for a crew of four, Esnol answered "I don't have that answer"; asked whether anyone had told him so, "I don't remember"; asked the factual basis, "I don't know. I, I wouldn't know what to answer you there." Ex. K, Esnol Dep. 23:18-24:6.

The 2023 Miami-Dade Prevailing Wage Schedule Plaintiffs cite (Plaintiff Ex. A at 18) concerns the Foreman classification trigger for jobs employing three to nine electricians and does not address project staffing design. The "crew of four" assertion is a litigation-prepared label without record foundation and cannot supply the predicate Plaintiffs need to explain a memory-based overtime claim that the contemporaneous records refute.

X.   **PLAINTIFFS' USUGA "ADMISSION" THEORY FAILS ON THE DEPOSITION RECORD.**

Plaintiffs cite the "particularly memorable" May 25, 2023 conversation with Paola Usuga (PSMF ¶ 25; Response at 7) as evidence that Statewide informally acknowledged uncompensated overtime. The deposition record refutes that characterization. Esnol testified that Usuga wanted to move 20 hours from one week "to the next week." Ex. K, Esnol Dep. 26:5-16. The dispute concerned rescheduling pending work, not hours already worked beyond 40. When asked whether the 20 hours represented "the amount of time Paola said… needed to complete the

9

work at that particular station," Esnol answered: "According to her, yes." *Id.* 30:8-11. The figure was the budgeted work allocation, corroborated by Usuga's testimony allocating 40 hours per week per station within a 160-hour station budget. Ex. G, Usuga Dep. 46:1-49:11, 87:21-89:9.

Esnol then conceded the conversation contained none of the elements that would make it evidence of overtime worked: Usuga did not mention any overtime by Plaintiffs, the word "overtime" itself, or any specific hours actually worked. *Id.* 30:18-31:23. The "She 100 percent knew" line (id. 31:6-9) responded to a general state-of-mind question; the controlling concession came at the next exchange: "in that conversation, did Paola acknowledge that you had worked overtime? A. I don't remember." *Id.* 31:10-12. On its most favorable reading, the conversation establishes only a forward-looking allocation policy, not an admission that overtime was or would be worked.

## CONCLUSION

Plaintiffs fail to carry their threshold burden of proving uncompensated overtime work. Plaintiffs' Response tries to obfuscate their lack of proof by attacking Statewide's records, including those filed under penalty of perjury. None of those attacks prove that Plaintiffs worked overtime. Moreover, Plaintiffs themselves destroyed contemporaneous records they claim were accurate. The Eleventh Circuit cases they cite hold the opposite of what they assert, and the SunPass arithmetic, the "NO WORK" and C. Novoa entries, the 200-hour discrepancy, the "crew of four" premise, and the Usuga conversation remain unreconciled with any inference of overtime worked. Defendants are entitled to summary judgment.

10

Respectfully submitted,

STEPHEN R. VERBIT, P.A.
Counsel for Defendants
6741 Orange Drive
Davie, Florida 33314
Tel: (954) 965-8350
Email: sverbit@verbitlawfl.com

By: /s/ Stephen R. Verbit
Stephen R. Verbit, Esq.
Florida Bar No. 710857

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 27th day of May 2026, I served a true and correct copy of the foregoing by the CM/ECF system to the following: Brian H. Pollock, Esq., Counsel for Plaintiffs, FAIRLAW Firm, 135 San Lorenzo Avenue, Suite 770, Coral Gables, Florida 33146, Email: brian@fairlawattorney.com.

By: /s/ Stephen R. Verbit
Stephen R. Verbit, Esq.