UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO. 1:25-cv-22530-JB/Torres

JESUS E. GONZALEZ HERNANDEZ,

      Plaintiff,

v.

STATEWIDE ELECTRICAL SERVICES, INC.
and NOEL MELO,

      Defendants.

_____/

**DEFENDANTS' REPLY STATEMENT OF MATERIAL FACTS**

Pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1(b)(3), Defendants Statewide Electrical Services, Inc. and Noel Melo respond to the Additional Facts asserted at paragraphs 56 through 74 of Plaintiffs' Statement of Material Facts [D.E. 36] as follows:

**VI. PLAINTIFFS' ADDITIONAL FACTS ON DEFENDANTS' TIMEKEEPING PRACTICES**

56. **Undisputed** that Melo so testified.

57. **Disputed in part.** Undisputed that Usuga's regular office schedule as secretary was 8:00 a.m. to 4:30 p.m. and that she was not invariably present at the moments when Plaintiffs arrived in the morning or departed in the afternoon. Disputed that Usuga lacked the practical ability to corroborate Plaintiffs' hours. As project manager on the Metrorail Project, Usuga's responsibilities included daily presence at the job site, daily interaction with Plaintiffs, materials coordination, and weekly meetings with Miami-Dade Transit representatives. Ex. G, Usuga Dep. 13:20–14:13, 72:25–73:20. Melo confirmed that

1

Usuga was physically present while JGH and Esnol were working and that her responsibilities as project manager included keeping track of the time. Ex. A, Melo Dep. 30:13–21, 32:1–4. Melo prepared the handwritten daily time sheets and the weekly Certified Payroll Reports based on his personal knowledge and on information reported to him by Usuga. Ex. I, Melo Decl. ¶¶ 5, 7. Statewide's contemporaneous record set consists of the handwritten daily time sheets, the "412034 Hours" spreadsheet, the weekly Certified Payroll Reports, and the SunPass toll records. Ex. I, Melo Decl. ¶¶ 5–11, 13–16; Ex. E; Ex. F; Ex. L; Ex. M. Disputed further that the County-required escorts were available verification sources for Defendants. The escorts were neither Statewide employees nor agents under Statewide's control, served security and access-control functions on County property, and had no obligation, training, or authority to track an electrical contractor's employee hours. Plaintiffs identified Leo Interian by name in their Second Amended Rule 26(a) Disclosures as a Miami-Dade Transit Supervisor believed to know about "the hours worked by Plaintiff, the schedules worked by Plaintiff and Defendants' other employees, Plaintiff's pay, and the policies and procedures of Defendants as they related to payment" and "overtime wage payments." Ex. B, Pls.' 2nd Am. Rule 26(a) Disclosures at i.5 [ECF No. 33-2]. Plaintiffs further confirmed Interian's status as a witness in their sworn interrogatory responses, stating that Interian "observed work performed at several stations." ECF No. 33-3, Rog Ans. No. 3; ECF No. 33-4, Rog Ans. No. 3. Plaintiffs also disclosed in those same Rule 26(a) Disclosures "Records maintained by Miami-Dade County concerning the opening, closing, suspension, and operational status of Metrorail stations," expressly designating those records as "Not in Plaintiffs' possession, custody, and/or control." Ex. B, Pls.' 2nd Am. Rule 26(a)

Disclosures at ii.3 (Bates Gonzalez 000940 to 000941) [ECF No. 33-2]. Plaintiffs did not depose Interian, did not subpoena any County escort, and did not obtain or place into evidence any Miami-Dade County record concerning the work on the Metrorail Project.

58. **Disputed in part.** Undisputed that Usuga did not prepare standalone personal documents purporting to record Plaintiffs' hours separately from the records Statewide actually maintained. Disputed to the extent the paragraph implies the absence of such standalone documents undermines the adequacy of the four record streams Statewide did maintain. Statewide's contemporaneous record set consists of the handwritten daily time sheets (Ex. I, Melo Decl. ¶ 5), the "412034 Hours" spreadsheet (Ex. F), the weekly Certified Payroll Reports (Ex. E), and the SunPass toll records (Ex. L; Ex. M).

## VII. PLAINTIFFS' ADDITIONAL FACTS ON STATION-BY-STATION OVERTIME

59. **Disputed.** Defendants' contemporaneous records show that JGH and Esnol worked 40 federal hours or fewer in every workweek during the project, including the weeks of April 17–20 and April 24–27, 2023. Ex. E, Certified Payroll Reports LCP #71–#100; Ex. F, 412034 Hours Spreadsheet; Ex. I, Melo Decl. ¶¶ 8, 11–12. The "412034 Hours" spreadsheet records JGH and Esnol performing installation work at Santa Clara, not Allapattah, during both weeks identified in this paragraph. Ex. F; *see* Table 1 to Defendants' Motion [D.E. 34, at 6]. The SunPass records for the same weeks show cumulative toll-to-toll vehicle time of 39.35 hours (April 17–20) and 33.41 hours (April 24–27), both substantially below the 42 hours and 40 minutes required to reflect a fully-completed 40-hour scheduled workweek with commute time. Ex. L; *see* Table 2 to Defendants' Motion [D.E. 34, at 7].

60. **Disputed.** Defendants' contemporaneous records show that JGH and Esnol worked 40 federal hours or fewer at Santa Clara during every claimed workweek and were not working at Santa Clara at all during portions of the period claimed. Ex. E; Ex. F; Ex. I, Melo Decl. ¶¶ 8, 11–12. The "412034 Hours" spreadsheet expressly records "NO WORK" for the week of May 15–18, 2023, and shows testing performed by C. Novoa rather than Plaintiffs during the week of May 8–11, 2023. Ex. F; *see* Table 1 to Defendants' Motion. The SunPass records for the third week claimed at Santa Clara (May 22–25, 2023) show cumulative toll-to-toll vehicle time of 22.73 hours, well below the 42 hours and 40 minutes baseline. Ex. L.

61. **Disputed.** Defendants' contemporaneous records show that JGH and Esnol worked 40 federal hours or fewer at Culmer in every claimed workweek. Ex. E; Ex. F; Ex. I, Melo Decl. ¶¶ 8, 11–12. The SunPass records for the three Culmer weeks show cumulative toll-to-toll vehicle time of 40.71, 39.21, and 41.58 hours respectively, none of which reaches the 42 hours and 40 minutes baseline required to reflect a fully-completed 40-hour scheduled workweek with commute time. Ex. L; *see* Table 2 to Defendants' Motion.

62. **Disputed.** Defendants' contemporaneous records show that JGH and Esnol worked 40 federal hours or fewer at Gap Tie 2 in every claimed workweek. Ex. E; Ex. F; Ex. I, Melo Decl. ¶¶ 8, 11–12. The SunPass records for the two Gap Tie 2 weeks show cumulative toll-to-toll vehicle time of 38.22 and 31.33 hours respectively. Ex. M; *see* Table 2 to Defendants' Motion.

63. **Disputed.** Defendants' contemporaneous records show that JGH and Esnol worked 40 federal hours or fewer at Overtown in every claimed workweek. Ex. E; Ex. F; Ex. I, Melo

Decl. ¶¶ 8, 11–12. The SunPass records for the first Overtown week (August 21–24, 2023) show cumulative toll-to-toll vehicle time of 19.33 hours. Ex. M; *see* Table 2 to Defendants' Motion.

64. **Disputed.** Defendants' contemporaneous records show that JGH and Esnol worked 40 federal hours or fewer at Brickell in every claimed workweek. Ex. E; Ex. F; Ex. I, Melo Decl. ¶¶ 8, 11–12. The Brickell weeks occurred after JGH ceased using the company vehicle on September 1, 2023, but Defendants' three other record streams independently document the 40-hour-or-fewer figures.

65. **Disputed in part.** Defendants' contemporaneous records show that JGH and Esnol worked no unpaid overtime in any workweek during the period of April 17 through September 28, 2023. Ex. E; Ex. F; Ex. I, Melo Decl. ¶¶ 8, 11–12. JGH testified that he first noticed in the very first week of the Metrorail Project that he was being paid only 40 hours per week. Ex. J, JGH Dep. 35:21–36:2. Despite that first-week awareness, Plaintiffs signed and accepted approximately 26 paychecks each over the course of the project, every one reflecting 40 hours and no overtime. Ex. I, Melo Decl. ¶ 12. The record contains no evidence that either Plaintiff filed a written complaint with Statewide, contacted the Department of Labor, or consulted counsel about the alleged underpayment during the 26-week period of their employment on the Metrorail Project. Ex. I, Melo Decl. ¶ 17; ECF No. 33-3, Rog Ans. Nos. 7–10; ECF No. 33-4, Rog Ans. Nos. 7–10. JGH testified that he caused his wife to prepare Bates Gonzalez 000856 [ECF No. 33-8] "because I knew that there was going to be problems. And I knew that he wasn't going to pay me and that's why I was going to claim all the overtime hours." Ex. J, JGH Dep. 45:19–25.

5

## VIII.   PLAINTIFFS' ADDITIONAL FACTS ON KNOWLEDGE AND CONTROL

66. **Disputed.** Statewide's project staffing was determined by its contract with Miami-Dade County and by the work to be performed, and the project was completed within the scheduled 40-hour-per-week framework. Ex. I, Melo Decl. ¶ 4. Asked at deposition to identify who designed the project for a crew of four, who told him so, and his factual basis for the assertion, Esnol answered, in turn, "I don't have that answer," "I don't remember," and "I don't know. I, I wouldn't know what to answer you there." Ex. K, Esnol Dep. 23:23–24:6. Esnol further conceded that the Miami-Dade County project managers permitted the work to proceed with the two-worker crew throughout the project and that the County managers "would see it and know it. They would see it daily because they would come to the station." *Id.* 24:15–25:4.

67. **Undisputed** that Miami-Dade County required on-site escorts to be present at the job sites during the workday. The escorts were County-affiliated personnel not under Statewide's control and had no obligation, training, or authority to track Plaintiffs' work hours. *See* response to ¶ 57 above.

68. **Disputed in part.** Undisputed that Melo's regular physical presence on the project was at Station 1 (Allapattah) and that his presence at Stations 2 through 6 was less frequent and was described in his deposition as "from time to time." Ex. A, Melo Dep. 99:16–25. Disputed to the extent the paragraph implies that Melo was wholly absent from Stations 2 through 6 or ceased his project-management role after Station 1. Melo testified that he made all technical decisions on the project and worked as a foreman, beginning with Station 1, after which he showed Plaintiffs how to perform the work at subsequent

stations because "all the stations were typical." Ex. A, Melo Dep. 100:5–14. Disputed further that Melo "stopped responding" to communications. Melo continued to receive and act on information communicated through Usuga throughout the project, which formed the basis for the daily handwritten time sheets and the weekly Certified Payroll Reports. Ex. I, Melo Decl. ¶¶ 5, 7.

69. **Disputed in part.** Undisputed that Usuga's scheduled office hours as secretary were 8:00 a.m. to 4:30 p.m. Disputed that the secretary schedule precluded the contemporaneous record system Statewide maintained. As project manager on the Metrorail Project, Usuga's responsibilities included daily presence at the job site, daily interaction with Plaintiffs, materials coordination, and weekly meetings with Miami-Dade Transit representatives. Ex. G, Usuga Dep. 13:20–14:13, 72:25–73:20. Melo confirmed that Usuga was physically present while JGH and Esnol were working at each station and that her responsibilities as project manager included keeping track of the time. Ex. A, Melo Dep. 30:13–21, 32:1–4. Melo prepared the handwritten daily time sheets and the weekly Certified Payroll Reports based on his personal knowledge and on information reported to him by Usuga. Ex. I, Melo Decl. ¶¶ 5, 7. Statewide's contemporaneous record set consists of the handwritten daily time sheets, the "412034 Hours" spreadsheet, the weekly Certified Payroll Reports, and the SunPass toll records. Ex. I, Melo Decl. ¶¶ 5–11, 13–16; Ex. E; Ex. F; Ex. L; Ex. M.

70. **Disputed in part.** Undisputed that the Certified Payroll Reports include entries for Angel Vaillant for the period referenced. Disputed that the Vaillant entries reflect phantom hours. Vaillant performed off-site project-support work, including warehouse work, picking up materials, and heavy lifting, as well as loading the van that Usuga drove to the

7

Metrorail stations. Ex. G, Usuga Dep. 19:13–24, 75:15–18. The hours entries for JGH and Esnol are recorded separately on the same CPRs.

71. **Disputed in part.** Undisputed that the CPRs include entries for Melo under the "Electrical Worker/Foreman" classification for the period referenced and that Melo testified his presence at Stations 2 through 6 was "from time to time." Ex. A, Melo Dep. 99:16–25. Disputed that the entries are inconsistent with Melo's deposition testimony. Melo testified that he worked as a foreman on the Metrorail Project, beginning with Station 1, where he "did that station with them myself" and "[a]ll technical information, all decisions were made by me." Ex. A, Melo Dep. 100:5–14. Melo further testified to the foreman role, including the authority to "be there to give instructions . . . can go out, can come back." Ex. A, Melo Dep. 101:3–17.

72. **Disputed.** The Foreman classification on the Miami-Dade County Prevailing Wage Schedule sets a wage rate applicable to foremen on jobs with three to nine electricians. The hours entries for JGH and Esnol are recorded separately on the same CPRs. Ex. E.

73. **Disputed.** See Defendants' response to paragraphs 71 and 72 above.

## IX. PLAINTIFFS' ADDITIONAL FACT ON PRIOR LAWSUIT

74. **Disputed.** The cited state-court case, *Hernandez v. Statewide Electrical Services, Inc.*, No. 2019-29508-CA-01, reflects only that a prior lawsuit was filed against Statewide. Plaintiffs offer no evidence of any adverse judgment, verdict, finding of liability, or terms of resolution.

STEPHEN R. VERBIT, P.A.
Counsel for Defendants
6741 Orange Drive
Davie, Florida 33314
Telephone: (954) 965-8350
Email: sverbit@verbitlawfl.com

By:  /s/ Stephen R. Verbit
    Stephen R. Verbit, Esq.
    Florida Bar No. 710857

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 27th day of May, 2026, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will serve a Notice of Electronic Filing on all counsel of record.

By:  /s/ Stephen R. Verbit
    Stephen R. Verbit, Esq.