**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 1:25-cv-22530-JB/Torres

JESUS E. GONZALEZ HERNANDEZ, and
ESNOL ALEJANDRO GONZALEZ CANTERO,

Plaintiffs,

v.

STATEWIDE ELECTRICAL SERVICES, INC.,
and NOEL MELO,

Defendants.
_______________________________________________/

**DEFENDANTS' MOTION FOR SPOLIATION SANCTIONS AND INCORPORATED MEMORANDUM OF LAW**

Pursuant to the Court's inherent authority to sanction the destruction of evidence, Defendants Statewide Electrical Services, Inc. and Noel Melo move for sanctions arising from Plaintiff Jesus E. Gonzalez Hernandez's intentional destruction of the only contemporaneous records of the hours he now claims to have worked. Defendants request alternative relief: first, that the Court instruct the jury at trial that it must presume the destroyed records would not have supported the overtime hours Plaintiffs claim, subject to Plaintiffs' opportunity to rebut that presumption; and second, and in the alternative, that the Court instruct the jury that it may draw that inference.

## I. INTRODUCTION

This is a Fair Labor Standards Act overtime case in which two Plaintiffs each claim exactly eighty-four hours of unpaid overtime, in identical week-by-week increments, across a six-station Miami-Dade Metrorail project worked in 2023. Four independent, contemporaneous record sources, including weekly certified payroll reports filed with Miami-Dade County under penalty

of perjury, show that Plaintiffs worked forty hours or fewer in every workweek. Plaintiffs' answer to that documentary record is the lead Plaintiff's memory and a one-page handwritten summary, Bates Gonzalez 000856, that his wife prepared after the project ended.

The lead Plaintiff, Jesus E. Gonzalez Hernandez ("JGH"), testified that he kept contemporaneous daily and weekly notes of the hours he now claims, and that those notes contained day-by-day, week-by-week, station-by-station detail. He then testified that he intentionally threw those notes away. He did so after his wife had reduced them to the self-serving one-page summary, and at a time when, by his own sworn admission, he already knew he would not be paid and "was going to claim all the overtime hours." The notes are gone. No copy exists.

The relaxed evidentiary standard that ordinarily aids FLSA plaintiffs exists to protect employees from employers who fail to keep or who destroy time records. It was never meant to reward a plaintiff who carries the burden of proof and destroys his own contemporaneous records while preparing to sue. The destruction here is the mirror image of the conduct the doctrine guards against, and it warrants sanctions.

This Motion is directed to the trial of this action. The Court denied Defendants' Motion for Summary Judgment (D.E. 34) from the bench on September 2, 2026, and this case is now set for the two-week trial period beginning November 2, 2026. Defendants therefore do not renew any request for judgment and seek only the evidentiary sanction appropriate to a jury trial: an instruction directing the jury how it may treat the records JGH destroyed.

## II. FACTUAL BACKGROUND

**A. The claim and the contemporaneous record.** Plaintiffs allege that from April through September 2023 they each worked eighty-four hours of unpaid overtime on the Traction Power Switchgear Replacement Project at six Metrorail stations. D.E. 33 (Statement of Material

Facts) ¶¶ 1-9. Statewide maintained four contemporaneous, mutually corroborating records of Plaintiffs' hours: handwritten time sheets, a project hours spreadsheet, weekly Certified Payroll Reports filed with Miami-Dade County through the LCP Tracker system under penalty of perjury, and SunPass toll records for the company vehicle furnished to JGH. D.E. 33 ¶¶ 10-25; D.E. 34 at 2-9. Each source shows forty hours or fewer per workweek, with no overtime. *Id.*

**B. JGH's contemporaneous notes and their destruction.** JGH testified that he kept contemporaneous notes of his hours during the project. JGH Dep. 39:5-14; 39:24-40:6 (Ex. J to D.E. 33; ECF No. 33-10). He testified that the notes contained granular, day-by-day, week-by-week, station-by-station detail. *Id.*; D.E. 33 ¶ 32. He then testified that he intentionally discarded those notes: "I threw them out once my wife declared this record here. I had all the numbers for each one of the stations. Why did I want to keep those notes?" JGH Dep. 39:5-14; *see also id.* 41:17-24; 46:1-24. No copy or reproduction of the destroyed notes has been produced, and JGH does not possess one. JGH Dep. 40:2-6; 41:17-24. Nor did Esnol keep any contemporaneous record of his own hours; he testified that he kept no calendar, planner, notebook, or diary, and that he has no documents showing when he started or stopped work on any day. Esnol Dep. 42:24-43:5; 43:9-14 (Ex. K to D.E. 33; ECF No. 33-11). JGH further confirmed that he has no document showing his start time on any day, his stop time on any day, or his total hours in any week, and no text messages, emails, or photographs concerning his hours. JGH Dep. 40:7-25; 42:4-12.

**C. Bates 856 is a non-contemporaneous derivative that strips away the detail.** The surviving summary, Bates Gonzalez 000856, was not written by either Plaintiff; it is in JGH's wife's handwriting and was prepared in approximately September 2023, after the project ended. JGH Dep. 44:6-45:11; D.E. 33 ¶¶ 30-31. It records only six station names and a single total figure beside each, with no daily start times, stop times, or daily hours. D.E. 33 ¶ 34. JGH testified that

the eighty-four-hour figure is "an estimate," derived "[f]rom memory and what I had written down." JGH Dep. 88:5-8; 43:15-16.

**D. JGH destroyed the notes while already anticipating this claim.** JGH testified that he created the summary and discarded the underlying notes before he retained counsel and because he already anticipated a dispute over his pay: "I knew that something was going to go wrong," and "I knew that he wasn't going to pay me and that's why I was going to claim all the overtime hours." JGH Dep. 45:12-25. Months later, on February 24, 2025, Plaintiffs' counsel served Statewide with a pre-litigation preservation demand that expressly listed "[p]ersonal notes, handwritten diaries, and personal calculations" among the categories of evidence Statewide was obligated to preserve. Ex. A (Feb. 24, 2025 Preservation Letter) at 3. The category Plaintiffs demanded that Statewide preserve is the very category JGH had already destroyed.

## III. LEGAL STANDARD

Spoliation is the destruction or material alteration of evidence, and the imposition of sanctions for it is governed by federal law as an evidentiary matter incident to the Court's inherent authority to manage litigation before it. *Flury v. DaimlerChrysler Corp.*, 427 F.3d 939, 943-44 (11th Cir. 2005). Rule 37(e) does not govern, because that Rule by its terms applies only to electronically stored information, and the destroyed notes are handwritten paper.

Whether to impose a sanction, and which one, is governed by four factors: "(1) whether the party seeking sanctions was prejudiced as a result of the destruction of evidence and whether any prejudice could be cured, (2) the practical importance of the evidence, (3) whether the spoliating party acted in bad faith, and (4) the potential for abuse if sanctions are not imposed." *ML Healthcare Servs., LLC v. Publix Super Mkts., Inc.*, 881 F.3d 1293, 1307 (11th Cir. 2018). The

available sanctions range from a jury instruction raising a presumption against the spoliator, to the exclusion of evidence, to dismissal of the case. *Flury*, 427 F.3d at 945.

An adverse inference, whether mandatory or permissive, requires a showing of bad faith. *Tesoriero v. Carnival Corp.*, 965 F.3d 1170, 1184 (11th Cir. 2020); *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1310 (11th Cir. 2009) (a showing of malice is not required, but mere negligence in losing or destroying records will not suffice); *Bashir v. Amtrak*, 119 F.3d 929, 931 (11th Cir. 1997) (negligent loss will not support the inference because it does not reflect a "consciousness of a weak case"). Bad faith "in the context of spoliation, generally means destruction for the purpose of hiding adverse evidence." *Tesoriero*, 965 F.3d at 1184. It may be established by circumstantial evidence and does not require any particular form of conduct. *Skanska USA Civ. Se., Inc. v. Bagelheads, Inc.*, 75 F.4th 1290, 1314 (11th Cir. 2023). The duty to preserve attaches when a party reasonably anticipates litigation, and a party's own admission that it anticipated litigation establishes that the duty had attached. *Tesoriero*, 965 F.3d at 1183-85.

## IV. ARGUMENT

### A. The predicate for spoliation sanctions is established, and every hallmark of bad faith is present.

A party seeking spoliation sanctions must show that the missing evidence existed, that the spoliator had a duty to preserve it, and that it was crucial to the movant's ability to prove its case or defense. *Managed Care Solutions, Inc. v. Essent Healthcare, Inc.*, 736 F. Supp. 2d 1317, 1322 (S.D. Fla. 2010). Each element is satisfied. The notes existed and were within JGH's exclusive control; he testified repeatedly that he kept them and described their day-by-day, week-by-week, station-by-station detail. JGH Dep. 39:5-14; 39:24-40:6. His duty to preserve had attached, for the reasons stated below. And the notes were not marginal; they were, on Plaintiffs' own account, the

sole contemporaneous source for the eighty-four-hour estimate that is the centerpiece of the case. JGH Dep. 88:5-8; D.E. 33 ¶¶ 32, 35.

The contested element is bad faith, which means "destruction for the purpose of hiding adverse evidence." *Tesoriero*, 965 F.3d at 1184. Bad faith need not be proven by direct evidence. Where the movant relies on the circumstances of the destruction, the Eleventh Circuit recognizes four hallmarks of bad faith: (1) that evidence once existed which could fairly be supposed material to a claim or defense; (2) that the spoliating party engaged in an affirmative act causing the evidence to be lost; (3) that it did so while it knew or should have known of its duty to preserve; and (4) that the affirmative act cannot be credibly explained as not involving bad faith. *Managed Care Solutions*, 736 F. Supp. 2d 1317; *see Skanska*, 75 F.4th 1290 (bad faith may be established by circumstantial evidence). All four hallmarks are present here.

First, the destroyed notes existed and were material. JGH testified that he kept contemporaneous notes throughout the project and that they held the granular daily and weekly detail underlying his claim. JGH Dep. 39:5-14; 39:24-40:6; D.E. 33 ¶ 32. Evidence does not come more squarely within the first hallmark than the only contemporaneous record of the hours in dispute.

Second, the loss resulted from an affirmative act, not passive misplacement. JGH did not lose the notes; he discarded them, testifying, "I threw them out once my wife declared this record here." JGH Dep. 39:5-14. That is the affirmative act the second hallmark requires.

Third, JGH knew or should have known of his duty to preserve when he destroyed the notes. The duty attaches upon reasonable anticipation of litigation, and a party's own admission of anticipation establishes it. *Tesoriero*, 965 F.3d at 1184-85. JGH supplied that admission: he testified that he discarded the notes because he already knew he would not be paid and "was going

to claim all the overtime hours." JGH Dep. 45:12-25. That the destruction preceded his retention of counsel is immaterial, because the trigger is anticipation, not the filing of suit or the entry of a formal hold. The pre-litigation demand his own counsel later served sharpens the point. On February 24, 2025, Plaintiffs insisted that Statewide preserve the precise category of evidence JGH had already thrown away: "personal notes, handwritten diaries, and personal calculations." A litigant who demands that his opponent preserve the very records he has destroyed cannot credibly cast his own destruction as innocent.

Fourth, the destruction cannot be credibly explained as anything other than bad faith. JGH did not discard everything; he destroyed the detailed source while preserving the favorable one-page summary derived from it. A party who curates the record in that way, keeping the self-serving abstract and eliminating the granular detail that alone would permit it to be tested, has destroyed evidence "for the purpose of hiding adverse evidence." *Tesoriero*, 965 F.3d at 1184. No innocent reason accounts for the selective destruction of the only records capable of confirming or refuting the eighty-four-hour estimate.

JGH may respond that he is a layperson who had not retained counsel and operated under no formal litigation hold, and that he discarded the notes only because he believed the summary captured them. Neither point defeats sanctions. Bad faith does not require malice; it requires only the purposeful destruction of evidence the party was obligated to preserve, and the Eleventh Circuit excludes mere negligence without demanding a showing of malice. *Mann*, 588 F.3d at 1310. The Court has accordingly affirmed spoliation sanctions against plaintiffs who destroyed evidence when litigation was reasonably foreseeable, holding that "even if the plaintiffs did not act with malice," they were "the more culpable party" and caused substantial prejudice. *Graff v. Baja Marine Corp.*, 310 F. App'x 298, 302 (11th Cir. 2009). And the absence of a formal hold is beside

the point, because the governing question is anticipation, which JGH's own testimony answers against him. *Tesoriero*, 965 F.3d at 1184-85. His self-serving belief that a stripped-down summary adequately replaced the detailed records is not a defense to their destruction; it is precisely the unilateral judgment the spoliation doctrine forbids.

**B. The Court should instruct the jury that it must presume the destroyed records would not have supported the claimed overtime, subject to rebuttal.**

The bad-faith destruction warrants an instruction that the jury must presume the destroyed daily and weekly notes would not have supported the eighty-four hours of overtime Plaintiffs claim, subject to Plaintiffs' opportunity to rebut that presumption. Such an instruction lies within the recognized range of spoliation sanctions, *Flury*, 427 F.3d at 945, and the *ML Healthcare* factors support it here. The prejudice to Defendants is concrete and uncurable: the destroyed notes were the only contemporaneous source of the claimed hours, and Bates 856 cannot cure their loss because it discards every element of the detail JGH said the notes contained, reducing the claim to six bare totals. D.E. 33 ¶¶ 32, 34. The practical importance of the evidence is undisputed, because the notes were the foundation of the estimate on which the entire claim rests. JGH Dep. 88:5-8. The destruction was in bad faith, for the reasons stated above. And the potential for abuse is plain, because a rule that permitted a burden-bearing plaintiff to destroy his contemporaneous records and proceed on an after-the-fact summary would invite precisely the conduct that occurred here.

The instruction is also necessary to prevent an inversion of the protective rule on which FLSA plaintiffs ordinarily rely. That rule relaxes a plaintiff's burden where the employer has failed to keep or has destroyed records, on the theory that the employer should not benefit from the gaps it created. Here the employer kept four sets of records, and it is the Plaintiff who destroyed his own. To let Plaintiffs try this case on the strength of a curated summary, while the lead Plaintiff's

deliberate destruction of the source records passes without any consequence at all, would turn that doctrine on its head and reward the very conduct it was designed to deter.

The requested instruction is a measured response. It does not remove any issue from the jury, does not direct a verdict, and does not relieve Defendants of the obligation to try the case on the merits. It informs the jury of the consequence of a party's deliberate destruction of the evidence that alone could have tested his own claim, and it leaves Plaintiffs free to rebut the presumption with whatever proof they have.

**C. In the alternative, the Court should give a permissive adverse-inference instruction.**

Should the Court decline to impose a mandatory presumption, the same record amply supports the lesser sanction of a permissive instruction, advising the jury that it may infer that the destroyed notes would not have supported Plaintiffs' overtime claim. The bad-faith predicate required for an adverse inference is satisfied, *Tesoriero*, 965 F.3d at 1184, and a permissive instruction is the most modest means of preventing Plaintiffs from benefiting from the destruction of evidence that only JGH controlled.

**V. CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court enter an order granting the following relief: (1) instructing the jury at trial that it must presume the destroyed records would not have supported the overtime hours Plaintiffs claim, subject to Plaintiffs' opportunity to rebut that presumption; (2) in the alternative, instructing the jury that it may infer that the destroyed records would not have supported Plaintiffs' overtime claim; and (3) granting such further relief as the Court deems just and proper.

## CERTIFICATE OF GOOD FAITH CONFERENCE

Pursuant to Local Rule 7.1(a)(3), undersigned counsel certifies that prior to filing this Motion, counsel for Defendants conferred with counsel for Plaintiffs by email September 8, 2026 and by telephone on September 11, 2026, in a good faith effort to resolve the issues raised herein. Counsel for Plaintiffs has indicated that Plaintiffs oppose the relief requested.

Respectfully submitted,

**STEPHEN R. VERBIT, P.A.**
6741 Orange Drive
Davie, Florida 33314
Tel: (954) 536-9428
sverbit@verbitlawfl.com

By: __/s/________________________________
**STEPHEN R. VERBIT**
Florida Bar No. 710857
Counsel for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on September 11, 2026, I electronically filed the foregoing with the Clerk of Court using CM/ECF. I also certify that the foregoing is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

By: __/s/__________________________
**STEPHEN R. VERBIT**