UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:25-CV-22530-BECERRA/TORRES

JESUS E. GONZALEZ HERNANDEZ, AND
ESNOL A. GONZALEZ CANTERO

Plaintiffs,

vs.

STATEWIDE ELECTRICAL SERVICES, INC. AND
NOEL MELO,

Defendants.
_______________________________/

**DECLARATION OF JESUS E. GONZALEZ HERNANDEZ**

I, Jesus E. Gonzalez Hernandez, make the following declaration pursuant to 28 U.S.C. § 1746 and declare as follows:

**Background**

1. My name is Jesus E. Gonzalez Hernandez. I am over the age of 18 and competent to testify to the matters in this Declaration, which are based on my personal knowledge. I am one of the Plaintiffs in this case, and I make this Declaration in support of Plaintiffs' Response in Opposition to Defendants' Motion for Spoliation Sanctions [ECF No. 48].

2. I was born in Cuba and came to the United States in 2013. I speak only Spanish. I cannot understand, read, or write English. This Declaration was translated into Spanish for me before I signed it, and I understand its contents.

3. I completed the twelfth grade and an intermediate-level electrical technician course in Cuba. I have never attended school in the United States, and I have never had any legal education or training.

4. I am a journeyman electrician. I obtained my journeyman's license in Miami-Dade County after studying for and passing the test. I worked for Statewide Electrical Services, Inc. ("Statewide") as an electrician from approximately November 2014 until approximately October 2023.

5. Before this case, I had never filed or been a party to a lawsuit, never given a deposition, and never hired a lawyer for any work-related matter.

**<u>My Notes of Our Hours</u>**

6. From April through September 2023, my son, Esnol A. Gonzalez Cantero ("Esnol"), and I worked together for Statewide on the Miami-Dade Metrorail project at six stations. We worked at the same stations and the same hours, and we were together from the time I picked him up in the morning until I dropped him off at the end of the day.

7. During the project, I wrote down on sheets of paper the days we worked and the hours we worked, including the extra hours at each station. I kept these papers for myself, so that I could keep track of the overtime hours that Paola Usuga told us were being carried over from one station to the next, and that Mr. Melo had told us would be paid when we finished all six stations.

8. My handwriting is very bad and difficult to read, and I have difficulty spelling, including the names of the stations and other words in English.

**Preparation of Bates Gonzalez 000856**

9. When we finished the last station, in September 2023, I gave my sheets of paper to my wife, Maritza Alfonso Bonachea, and asked her to write the information neatly on one page because her handwriting is much better than mine. Esnol and I were with her and told her what to write. The page she wrote is the document produced in this case as Bates Gonzalez 000856.

10. The word "calendar" written next to the Santa Clara and Gap Tie 2 entries on Bates Gonzalez 000856 refers to the day-by-day entries on my sheets of paper for those stations. The note at the bottom of the page refers to the days when Esnol and I unloaded equipment at each station, when we always worked more than the ten hours that had been established.

11. After my wife finished Bates Gonzalez 000856, I reviewed it. It accurately reflects the overtime hours for each station that were written on my sheets of paper. My wife, Esnol, and I did not leave out, change, or add any hours when she prepared it.

**What Happened to the Sheets of Paper**

12. Once Bates Gonzalez 000856 was written, I did not think I needed to keep my old, messy sheets of paper, because all of the numbers for each station were now written clearly in one place.

13. During my deposition, when I was asked what happened to those notes, I testified that I "threw them out" after my wife prepared the summary. I do not, however, have an actual recollection today of physically throwing these notes away or of when or how they left my possession. When I said that I "threw them out," I was explaining that, once Bates Gonzalez 000856 was prepared, I no longer thought I needed the sheets.

14. Since the Metrorail project, I have moved residences twice. Because I do not remember what ultimately happened to those notes, I believe they may have been unintentionally discarded or lost during one of those moves, but I do not know that for certain.

15. At no time before I hired FairLaw Firm did I know that the law might require me to keep those sheets of paper. No one—not Mr. Melo, Ms. Usuga, anyone else at Statewide, anyone from Miami-Dade County, or any attorney—had ever asked me or told me to keep them.

16. What I do know is that I did not intentionally destroy or discard the notes for the purpose of concealing evidence, preventing Defendants from obtaining them, or preventing their use in this lawsuit. Whatever happened to the sheets of paper, it was not because they contained anything that hurt my claim or Esnol's claim. The sheets did not contain any hours different from those written on Bates Gonzalez 000856. If I had known that I should keep them, I would have kept them.

**Events After the Project Ended**

17. At my deposition, I testified that I created Bates Gonzalez 000856 because I "knew that something was going to go wrong" and that I "was going to claim all the overtime hours." What I meant was that I expected that Mr. Melo might not pay us the overtime and the bonus he had promised, and I wanted the hours written down clearly so that I could ask him to pay us. At that time, I was not planning to file a lawsuit.

18. When I realized that I was not being paid overtime, I did not consult with an attorney and did not contact the Department of Labor or any other government agency.

19. After the project ended, Mr. Melo told me that Statewide had not been paid by Miami-Dade County and that he could not pay me. I waited more than a year to be paid. When

Statewide was finally paid by the County, Mr. Melo told me, "I have nothing for you." It was only then that I decided to look for a lawyer.

20. A friend told me about FairLaw Firm. I first contacted and hired FairLaw Firm in January 2025. By that time, I no longer had my sheets of paper.

21. I kept Bates Gonzalez 000856 and gave it to my attorneys, and it was produced in this case. I have given my attorneys every document I have that relates to my hours.

**DECLARATION**

By my signature below, I execute this declaration in Miami-Dade County, Florida, and declare under penalty of perjury that the foregoing is true and correct.

Dated: 25/09/2026

Jesus Gonzalez Hernandez (Sep 25, 2026 16:02:22 EDT)
JESUS E. GONZALEZ HERNANDEZ

**CERTIFICATE OF TRANSLATION**

I, Katelyn Schickman, Esq., certify that I am fluent in English and Spanish and competent to translate between them. On September 25, 2026, I translated the foregoing Declaration of Jesus E. Gonzalez Hernandez from English into Spanish and [read it aloud to him in Spanish in its entirety / provided him with a written Spanish translation]. Jesus E. Gonzalez Hernandez stated that he understood the Declaration and that its contents are true and correct before signing it in my presence.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: 9/25/26

KATELYN SCHICKMAN, ESQ.