UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:25-CV-22530-BECERRA/TORRES

JESUS E. GONZALEZ HERNANDEZ AND
ESNOL ALEJANDRO GONZALEZ CANTERO,

Plaintiffs,

vs.

STATEWIDE ELECTRICAL SERVICES, INC.
and NOEL MELO,

Defendants.
_______________________________________/

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION IN LIMINE TO EXCLUDE AUDIO RECORDING**

Plaintiffs Jesus E. Gonzalez Hernandez ("JGH") and Esnol Alejandro Gonzalez Cantero ("Esnol") (collectively, "Plaintiffs") respectfully submit this Response in Opposition to Defendants' Motion in Limine to Exclude Audio Recording [ECF No. 50] (the "Motion"), and state as follows:

## SUMMARY OF ARGUMENT

Defendants ask the Court to exclude, before trial and on every conceivable use, a recording of Statewide's own project manager, Paola Usuga, discussing Plaintiffs' hours and pay with the two Plaintiffs. They go further still, asking the Court to bar "any reference to the recording, its alleged contents, or any characterization of its contents" in opening statement, closing argument, or the examination of witnesses. [ECF No. 50 at 8]. That request would silence the two people who took part in the conversation and would shield Defendants' own trial witness from impeachment with her own words. Defendants cite no case law for any of it. The Motion should be denied.

First, the recording is admissible substantive evidence. It is readily authenticated by JGH and Esnol, who participated in the conversation and can identify every voice on it. Fed. R. Evid. 901(b)(1), (b)(5). Usuga's recorded statements, made while she served as Statewide's project manager and concerning the very hours she was responsible for tracking, are statements of an opposing party and are not hearsay. Fed. R. Evid. 801(d)(2)(D). Defendants themselves describe Usuga as Statewide's "project manager and record keeper" and, in another filing, as the "project manager gathering hours as part of her duties." [ECF No. 50 at 2; ECF No. 52 at 8].

Second, the absence of a certified translation is not a ground for exclusion. No rule required Plaintiffs to translate their own evidence during discovery; Defendants have had the recording since Plaintiffs' initial disclosures, and their own witness is a participant in it. The Eleventh Circuit has long prescribed the procedure for foreign-language recordings: the parties attempt a stipulated translation and, failing that, each side offers its own version for the jury to weigh. *United States v. Cruz*, 765 F.2d 1020, 1023 (11th Cir. 1985). Plaintiffs will serve a certified English translation and transcript well in advance of trial, and a certified interpreter, sworn under Rule 604, will be present at trial to interpret the recording for the jury as it is played. Defendants remain free to offer their own translation and to cross-examine on any disputed passage.

Third, the conversation is plainly relevant. In it, a Statewide manager told Plaintiffs that hours beyond the allotted budget would not be paid but would be "compensated later with time off," a practice the FLSA does not permit a private employer to use. 29 U.S.C. § 207(o)(1). That statement bears directly on whether Statewide knew Plaintiffs were working unpaid hours, on whether Statewide discouraged accurate reporting of those hours, and on willfulness. Defendants' contrary argument rests on a selective presentation of Esnol's deposition that omits his testimony about what Usuga actually said. And Defendants' dispute over the precise date and location of the

conversation, which their own witness's testimony undercuts, goes to weight, not admissibility. *Huddleston v. United States*, 485 U.S. 681, 690 (1988).

Fourth, and at a minimum, the recording is admissible to impeach Usuga, whom Defendants intend to call at trial. [ECF No. 52 at 7]. Usuga testified that no employee ever complained to her about hours, that no one worked beyond the scheduled hours, and that the only dispute at Santa Clara was Plaintiffs' request to be paid for hours they did not work. Her own recorded words say otherwise. Impeachment evidence is exempt from the disclosure rules on which Defendants rely, Fed. R. Civ. P. 26(a)(1)(A)(ii), 26(a)(3)(A), and extrinsic evidence of an opposing party's own inconsistent statement is admissible, Fed. R. Evid. 613(b).

Finally, whatever the Court decides about the recording itself, JGH and Esnol may testify from personal knowledge about a conversation in which they participated. Fed. R. Evid. 602. Defendants offer no basis for barring that testimony, or any reference to it, at trial.

## BACKGROUND

### A. The Recording and Its Disclosure

Plaintiffs identified the audio recording in their Rule 26(a) initial disclosures and produced it to Defendants in discovery, as Defendants acknowledge. [ECF No. 50 at 2]. Plaintiffs' sworn interrogatory answers also identify the recording, describing it as "an audio recording in which Ms. Usaga discussed the overtime hours that would not be paid but might later be compensated with time off," and confirm that it was served with Plaintiffs' responses to Defendants' first requests for production. [ECF No. 33, Ex. C, No. 6(e)]. The conversation was conducted in Spanish. [ECF No. 33, Ex. K, Esnol Dep. 29:10–11].

Plaintiffs marked the recording as Exhibit 4 at Usuga's February 10, 2026 deposition and played a portion of it on the record. [ECF No. 33, Ex. G, Usuga Dep. 93:1–95:12]. Defendants'

counsel objected that the recording was obtained unlawfully and instructed Usuga not to answer any questions about it, including the question of whose voices appear on it. *Id.* at 94:2–19, 95:14–22. Defendants have not pursued that objection in the Motion.

**B. Plaintiffs' Sworn Account of the Conversation**

In their sworn answers to Defendants' Interrogatory No. 6, JGH and Esnol each explained that they raised their unpaid overtime with Usuga, who "served as [Melo's] intermediary and was assigned to handle project communications." [ECF No. 33, Exs. C, D, No. 6(f)]. They described "[a] particularly memorable discussion" at Station 2 "on or about May 25, 2023," in which Usuga "responded that the work had to be completed in 20 hours and said that if we exceeded 20 hours, we would not be paid for that week but would instead be compensated later with time off." *Id.* No. 6(f).

JGH testified that when he reported his hours to Usuga, she "would only write down 10 hours" even when he worked later, and told him she would "transfer those hours to the next station." [ECF No. 33, Ex. J, JGH Dep. 75:3–10]. Asked about the conversation described in his interrogatory answer, JGH confirmed it and added: "But it wasn't only at that station. We had arguments at every station." *Id.* at 76:11–19.

**C. Esnol's Deposition Testimony**

The Motion presents Esnol's deposition testimony as a series of "I don't remember" answers. [ECF No. 50 at 5–6]. It omits the testimony that preceded and followed those answers. Asked whether any conversation with Usuga stood out, Esnol testified: "She wanted to move 20 hours from one week to another, and that was the conversation where we went back and forth the most." [ECF No. 33, Ex. K, Esnol Dep. 26:5–10]. He continued: "She said that they, they weren't going to pay those hours – that they weren't going to pay those hours, that they could make it up

with time," and explained, "They don't offer overtime so they could tell you, 'oh, I can give you hours for next week.'" *Id.* at 26:18–27:2. He confirmed that Usuga said the work had to be completed in 20 hours. *Id.* at 29:24–30:2.

Asked whether Usuga said that hours beyond the 20-hour allotment would not be paid but would be compensated later with time off, Esnol answered: "It's correct. They were going to compensate it with time, but overtime, they were not going to pay you." *Id.* at 31:24–32:4. He testified that Usuga "would say that they were not going to pay for the extra time," that Plaintiffs would instead receive time off at some later date, and that "if you passed the 10 hours extra a week, they would say something like, 'Don't come Friday.' And then they would put the hours there. But they never paid anything for the extra hours of overtime." *Id.* at 32:11–33:1. And he explained: "It wasn't time off. It was time that I had worked and that they didn't want to pay it." *Id.* at 33:8–12. Asked whether Usuga acknowledged that Plaintiffs had worked overtime, Esnol responded: "She 100 percent knew that we worked extra hours." *Id.* at 31:6–9.

**D. Usuga's Deposition Testimony**

Usuga, whom Defendants describe as Statewide's "project manager and record keeper" on the Project, [ECF No. 50 at 2], and whom Defendants will call at trial, [ECF No. 52 at 7–8], testified that Plaintiffs had "pending 20 hours" at the Santa Clara station and completed that work during the testing week at Gap Tie 2, moving back and forth between the two sites. [ECF No. 33, Ex. G, Usuga Dep. 47:5–8, 50:6–23, 52:2–8]. She acknowledged that Plaintiffs told her "even 20 hours were not enough to complete that station." *Id.* at 88:17–23. She testified, however, that no Statewide employee ever came to her with complaints about the hours they worked, that no employee worked outside the scheduled hours to her knowledge, and that the "only issue" she had

was at Santa Clara, where Plaintiffs "wanted me to pay those 20 hours even though they didn't work." *Id.* at 89:7–9, 90:18–21, 91:4–12.

**E. Defendants' Dispute Over the Date and Location of the Conversation**

Defendants contend that their internal "412034 Hours" spreadsheet, produced with their Supplemental Rule 26(e) Disclosure on February 9, 2026 [ECF No. 28], shows that Plaintiffs' crew worked at Gap Tie 2, rather than Station 2, on May 25, 2023. [ECF No. 50 at 3]. JGH testified that the calendar on which Defendants rely "was prepared by Noel and Paola." [ECF No. 33, Ex. J, JGH Dep. 68:1–5]. Esnol confirmed that his interrogatory answer placed the conversation at Station 2 on or about May 25, 2023, but testified that he did not remember the exact date and was not "100 percent" sure of the location. [ECF No. 33, Ex. K, Esnol Dep. 27:3–21].

**MEMORANDUM OF LAW**

A court "has the power to exclude evidence in limine only when evidence is clearly inadmissible on all potential grounds." *United States v. Laurent*, 603 F. Supp. 3d 1247, 1251 (S.D. Fla. 2022) (quotation omitted). "If evidence is not clearly inadmissible, evidentiary rulings must be deferred until trial to allow questions of foundation, relevancy, and prejudice to be resolved in context." *Id.* (quotation omitted). The movant bears the burden of demonstrating that the evidence is inadmissible on any relevant ground. *Id.* Defendants cannot carry that burden. The Motion cites no case law at all, and each of its arguments concerns foundation, weight, or the mechanics of presenting a translation, which are precisely the matters that must be resolved in the context of trial.

## I. THE RECORDING IS ADMISSIBLE AS SUBSTANTIVE EVIDENCE

### A. The Recording Can Be Readily Authenticated.

Authentication "merely involves the process of presenting sufficient evidence to make out a prima facie case that the proffered evidence is what it purports to be. Once that prima facie showing has been made, the evidence should be admitted, although it remains for the trier of fact to appraise whether the proffered evidence is in fact what it purports to be." *United States v. Caldwell*, 776 F.2d 989, 1001–02 (11th Cir. 1985); *see also United States v. Lebowitz*, 676 F.3d 1000, 1009 (11th Cir. 2012). Evidence may be authenticated through the testimony of a witness with knowledge, Fed. R. Evid. 901(b)(1), and a voice may be identified by anyone who has heard it "at any time under circumstances that connect it with the alleged speaker," Fed. R. Evid. 901(b)(5).

The testimony of a participant in a recorded conversation is the paradigm of sufficient authentication. In *United States v. Sarro*, the Eleventh Circuit held that "the fact that [the witness] was actually present at both meetings evidences his competency to testify at trial that the audio cassettes played in court were accurate reproductions of those meetings." 742 F.2d 1286, 1292–93 (11th Cir. 1984). Likewise, a witness who "had himself been a party to each of the conversations" is "in an excellent position to authenticate" both the recordings and their English transcripts. *United States v. Curbelo*, 726 F.3d 1260, 1271 (11th Cir. 2013); *see also United States v. Reeves*, 742 F.3d 487, 501–02 (11th Cir. 2014) (recordings properly authenticated through voice identification by witness familiar with speaker; "[i]t was up to the jury to determine the weight to place on this identification"). The more detailed foundation described in *United States v. Biggins*, 551 F.2d 64, 66 (5th Cir. 1977), is not a formalistic prerequisite: where there is independent evidence of a recording's accuracy, the trial court's "discretion to admit the evidence is not to be sacrificed to a formalistic adherence to the standard we establish." *Id.* at 67; *accord Reeves*, 742 F.3d at 501.

JGH and Esnol were both participants in the conversation. They can testify that the recording fairly and accurately captures it and can identify Usuga's voice and their own. That is more than sufficient. Notably, Defendants do not contend that the recording has been altered or that the voices on it belong to anyone other than JGH, Esnol, and Usuga, and when given the opportunity to identify the voices at her deposition, Usuga was instructed not to answer. [ECF No. 33, Ex. G, Usuga Dep. 95:14–22]. Defendants cannot foreclose inquiry into the recording's foundation and then seek its exclusion for want of one.

**B. Usuga's Recorded Statements Are Not Hearsay.**

A statement offered against an opposing party that "was made by the party's agent or employee on a matter within the scope of that relationship and while it existed" is not hearsay. Fed. R. Evid. 801(d)(2)(D). Defendants concede every element. They describe Usuga as Statewide's "project manager and record keeper" on the Project, [ECF No. 50 at 2], and, in opposing Plaintiffs' own motion in limine, they affirmatively argue that "Usuga was Statewide's project manager gathering hours as part of her duties," [ECF No. 52 at 8]. Her statements to Plaintiffs about how many hours their work was allotted, and whether hours beyond that allotment would be paid, concern matters squarely within the scope of that employment. Plaintiffs' own statements in the conversation are not offered for their truth, but to give context to Usuga's responses, and are therefore not hearsay at all. Fed. R. Evid. 801(c)(2).

**C. The Lack of a Certified Translation to Date Is Not a Ground for Exclusion.**

Defendants' lead argument is that the recording must be excluded because Plaintiffs have not yet produced a certified English translation. [ECF No. 50 at 4]. Defendants identify no rule,

and Plaintiffs are aware of none, that required a party to prepare and produce a translation of its own evidence during discovery, and no discovery request or court order required one here.

The Eleventh Circuit has instead prescribed a trial procedure for exactly this situation. "Initially, the district court and the parties should make an effort to produce an 'official' or 'stipulated' transcript, one which satisfies all sides. If such an 'official' transcript cannot be produced, then each side should produce its own version of a transcript or its own version of the disputed portions. In addition, each side may put on evidence supporting the accuracy of its version or challenging the accuracy of the other side's version." *Cruz*, 765 F.2d at 1023 (quoting *United States v. Wilson*, 578 F.2d 67, 69–70 (5th Cir. 1978)); *see also United States v. Llinas*, 603 F.2d 506, 509–10 (5th Cir. 1979) (procedure is "well suited" to cases "where the transcript is an English translation of a foreign language conversation").[1] Under that procedure, the English transcript of a foreign-language recording may be considered by the jury as substantive evidence, *Cruz*, 765 F.2d at 1023–24, and "the jury is entitled to consider the divergence in two transcripts of the same conversation, with the recording of it, as a problem of fact to be resolved in the traditional manner," *United States v. Onori*, 535 F.2d 938, 948 (5th Cir. 1976). The burden of challenging a proffered translation rests on the objecting party, who must offer its own version. *Llinas*, 603 F.2d at 509; *Curbelo*, 726 F.3d at 1271. The absence of an agreed translation is thus a reason to follow *Cruz*, not a reason to exclude the recording.

Plaintiffs will serve Defendants with a certified English translation and transcript of the recording, prepared by a qualified translator, prior to trial, and will confer with Defendants in an effort to reach a stipulated transcript as *Cruz* contemplates. That timing is consistent with the

[1] Decisions of the former Fifth Circuit rendered before October 1, 1981, are binding precedent in this Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

pretrial disclosure deadline of Rule 26(a)(3)(B) and precedes the parties' Joint Pretrial Stipulation, due October 20, 2026. [ECF No. 42 at 2]. Defendants will have the translation before trial and are free to prepare their own. They cannot claim unfair surprise: they have possessed the recording since Plaintiffs' initial disclosures, and their own witness is one of the three participants in the conversation.

In addition, a certified interpreter will be present at trial and can interpret the recording in open court as it is played. An interpreter "must be qualified and must give an oath or affirmation to make a true translation." Fed. R. Evid. 604. A sworn, certified interpreter rendering the recording into English in the jury's presence, subject to Defendants' objection and cross-examination on any passage they dispute, fully answers Defendants' concern that there is "no competent record of the recording's contents." [ECF No. 50 at 4]. The Court has ample authority to adopt that procedure, which is a matter of controlling "the mode and order of examining witnesses and presenting evidence" so as to "make those procedures effective for determining the truth." Fed. R. Evid. 611(a). Courts confronting Spanish-language recordings have done exactly that. *See Fernandez v. State*, 21 So. 3d 155, 156–57 (Fla. 4th DCA 2009) (approving procedure in which "the Spanish-language tapes were played in open court with [the translator] testifying regarding what was being said," subject to cross-examination on "the accuracy of her translations"); *see also Cruz*, 765 F.2d at 1024 (approving procedure in which the recording was played for the jury while an interpreter signaled jurors when to turn the pages of the English transcript). The live interpretation and the certified transcript work together: the jury hears the recording, follows a sworn translation, and resolves any genuine dispute about meaning "in the traditional manner." *Onori*, 535 F.2d at 948.

Nor does Rule 37(c)(1) supply a basis for exclusion. That Rule applies only when a party "fails to provide information or identify a witness as required by Rule 26(a) or (e)," and even then exclusion is unwarranted where "the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); *Romero v. Drummond Co.*, 552 F.3d 1303, 1323 (11th Cir. 2008). Plaintiffs disclosed and produced the recording itself, which is the evidence. A translation is an aid to the jury's understanding of that evidence, *see Cruz*, 765 F.2d at 1023, and any delay in providing one is harmless where Defendants have had the underlying recording for more than a year and will receive the translation well before trial.

Finally, Defendants misstate Rule 604. They describe it as making an interpreter "subject to any rule of law relating to qualification as an expert and the administration of an oath or affirmation." [ECF No. 50 at 4]. The Rule provides, in its entirety: "An interpreter must be qualified and must give an oath or affirmation to make a true translation." Fed. R. Evid. 604. Plaintiffs' translator will be qualified and will so certify. Rule 604 governs how a translation is presented; it provides no basis for excluding the underlying evidence.

**D. The Recording Is Relevant.**

Rule 401 sets a low bar. Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401. Defendants argue that the recording is irrelevant unless it contains a statement of "overtime hours actually worked" in a particular week. [ECF No. 50 at 5–6]. That is not the test. No single item of evidence must prove an entire claim to be relevant.

An FLSA plaintiff must demonstrate that he "worked overtime without compensation" and that the employer "knew or should have known of the overtime work." *Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1314–15 (11th Cir. 2007). "[I]f the employer knows or has reason to

believe that the employee continues to work, the additional hours must be counted." *Id.* at 1314 (quotation omitted); *see also* 29 C.F.R. § 785.11. It is "the duty of the management to exercise its control and see that the work is not performed if it does not want it to be performed." 29 C.F.R. § 785.13. And "when an employer's actions squelch truthful reports of overtime worked, or where the employer encourages artificially low reporting, it cannot disclaim knowledge." *Allen*, 495 F.3d at 1319.

A Statewide manager's statement that hours worked beyond an allotted budget "would not be paid for that week" is evidence that Statewide knew Plaintiffs were working additional hours, that it did not pay for them, and that it discouraged accurate reporting of them. [ECF No. 33, Exs. C, D, No. 6(f)]. Each is a fact of consequence under *Allen*. The statement is also evidence of the practice it describes. Only employees of "a public agency which is a State, a political subdivision of a State, or an interstate governmental agency" may receive compensatory time off "in lieu of overtime compensation." 29 U.S.C. § 207(o)(1). Statewide is a private employer. A Statewide manager's statement that excess hours would be "compensated later with time off" rather than paid is therefore probative of an unlawful pay practice, and of whether Statewide "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). The recording is also relevant to Usuga's credibility, which Defendants have placed squarely at issue by relying on her to lay the foundation for their own hours records. [ECF No. 52 at 7–8].

Defendants' contrary argument depends on an incomplete account of Esnol's testimony. The Motion quotes a string of "I don't remember" answers to questions about particular words and hour counts, [ECF No. 50 at 5], but omits Esnol's testimony that Usuga said Statewide "weren't going to pay those hours," that "[t]hey don't offer overtime," and that "overtime, they

were not going to pay you." [ECF No. 33, Ex. K, Esnol Dep. 26:18–27:2, 32:3–4]. A witness's inability to recall, three years later, whether a particular word was spoken goes to the weight of his testimony, not its admissibility, and it is a proper subject for cross-examination. And it is no argument against admitting the recording. Where a participant's memory of a conversation's precise wording has faded, a contemporaneous recording of that conversation is the most reliable evidence of what was said. Defendants' professed concern that relevance must be established "by admissible evidence, not by counsel's characterization," [ECF No. 50 at 6], is answered by admitting the recording itself.

**E. Defendants' Date and Location Dispute Goes to Weight, Not Admissibility.**

Defendants argue that the recording's "foundational predicate" has been "destroyed" because their spreadsheet shows that Plaintiffs worked at Gap Tie 2, rather than Station 2, on May 25, 2023. [ECF No. 50 at 7]. That argument fails for three reasons.

First, the recording's relevance does not depend on where the participants were standing or the precise date on which they spoke. What makes the recording relevant is what Usuga said about Plaintiffs' hours and pay. Plaintiffs' interrogatory answers placed the conversation "on or about" May 25, 2023, [ECF No. 33, Exs. C, D, No. 6(f)], and JGH testified that such disputes were not confined to a single station: "We had arguments at every station." [ECF No. 33, Ex. J, JGH Dep. 76:18–19].

Second, even if the date or location were a condition of relevance, Rule 104(b) asks only whether "the jury could reasonably find the conditional fact . . . by a preponderance of the evidence," and in making that determination the court "neither weighs credibility nor makes a finding" on the conditional fact. *Huddleston*, 485 U.S. at 690. Once a prima facie showing is made,

"it remains for the trier of fact to appraise whether the proffered evidence is in fact what it purports to be." *Caldwell*, 776 F.2d at 1002. Plaintiffs' testimony easily satisfies that standard.

Third, Defendants' own evidence undercuts their argument. Usuga testified that Plaintiffs had "pending 20 hours" at Santa Clara, that they completed that work during the testing week at Gap Tie 2, and that during that period they were "going back to Santa Clara" while also working at Gap Tie 2. [ECF No. 33, Ex. G, Usuga Dep. 47:5–8, 50:6–23, 52:2–8]. She identified the pending Santa Clara hours as the "only issue" she had with Plaintiffs' hours. *Id.* at 91:4–8. Defendants' spreadsheet, and the calendar that JGH testified was prepared by Melo and Usuga, [ECF No. 33, Ex. J, JGH Dep. 68:1–5], at most create a factual dispute about when and where a conversation about the Santa Clara hours occurred. That is a classic question of credibility for the jury, *see Sarro*, 742 F.2d at 1295 ("Credibility determinations and weight of evidence evaluations are left with the jury."), and Defendants are free to cross-examine Plaintiffs on it. It is not a basis for exclusion.

**F. Rule 403 Does Not Warrant Exclusion.**

Rule 403 is "an extraordinary remedy which should be used sparingly," and its "major function . . . is limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." *United States v. Cross*, 928 F.2d 1030, 1048 (11th Cir. 1991) (quotations omitted). Every danger Defendants identify under Rule 403 concerns playing Spanish-language audio for the jury "[w]ithout a certified translation in evidence." [ECF No. 50 at 7–8]. A certified translation and transcript will be in evidence, a certified interpreter will be present to interpret the recording as it is played, and the procedure endorsed in *Cruz* addresses any dispute about accuracy. Non-Spanish-speaking jurors will not be "exposed to uninterpretable audio," [ECF No. 50 at 8], because the audio will be interpreted for them under oath. Any concern

that Spanish-speaking jurors might rely on their own understanding of the audio is readily addressed by an instruction to rely on the translation received in evidence, and the jury may be instructed on the limited role of transcripts generally. *See Cruz*, 765 F.2d at 1023–24; *Onori*, 535 F.2d at 949. On the other side of the scale is evidence of substantial probative value: a contemporaneous recording of a Statewide manager's own statements about Plaintiffs' hours and Statewide's refusal to pay for them. That probative value is not "substantially outweighed" by anything. Fed. R. Evid. 403.

## II. AT A MINIMUM, THE RECORDING IS ADMISSIBLE TO IMPEACH USUGA

Even if the Court were to exclude the recording as substantive evidence, it should not preclude its use for impeachment. Defendants intend to call Usuga at trial. [ECF No. 52 at 7]. Any party may attack a witness's credibility, Fed. R. Evid. 607, and Usuga's deposition testimony is directly contradicted by her recorded statements. She testified that no Statewide employee ever came to her with questions or complaints about the hours they worked, that she was not aware of any employee working outside the scheduled hours, that when Plaintiffs raised the Santa Clara hours she told them "the hours that you work, they will be paid," and that the only issue was Plaintiffs' desire to be paid "even though they didn't work." [ECF No. 33, Ex. G, Usuga Dep. 88:17–89:9, 90:18–21, 91:4–12]. If she so testifies at trial, the recording, in which Plaintiffs raise their unpaid hours and Usuga responds that the excess hours will not be paid but will be made up with time off, is powerful evidence that her account is not accurate.

Extrinsic evidence of a witness's prior inconsistent statement is admissible once the witness is given an opportunity to explain or deny it, and that foundational requirement "does not apply to an opposing party's statement under Rule 801(d)(2)." Fed. R. Evid. 613(b). Usuga's statements, made as Statewide's project manager, are Statewide's statements under Rule 801(d)(2)(D), so the

recording may be used without restriction; in any event, Plaintiffs will afford Usuga the opportunity to explain or deny her statements on cross-examination. The subject of the impeachment, whether Statewide's project manager knew of and refused to pay for Plaintiffs' extra hours, is the central issue in the case and is anything but collateral.

Defendants' disclosure-based objections have no application to impeachment. The Federal Rules expressly exempt from both initial and pretrial disclosures evidence that a party may use "solely for impeachment." Fed. R. Civ. P. 26(a)(1)(A)(ii), 26(a)(3)(A). As the Eleventh Circuit has explained, Rule 26(a)(3) "exempts evidence used solely for impeachment because pretrial disclosure would significantly diminish its impeachment value." *Bearint ex rel. Bearint v. Dorel Juvenile Grp., Inc.*, 389 F.3d 1339, 1353 (11th Cir. 2004). Plaintiffs went beyond what the Rules require by disclosing and producing the recording in discovery. Defendants cannot convert that disclosure into a basis for insulating their own witness from her own words.

## III. PLAINTIFFS MAY TESTIFY ABOUT, AND COUNSEL MAY REFER TO, THE CONVERSATION

Defendants' request to preclude "any reference to the recording, its alleged contents, or any characterization of its contents" in opening statement, closing argument, or witness examination, [ECF No. 50 at 8], would reach far beyond the recording. The "contents" of the recording are a conversation in which JGH and Esnol participated. Defendants offer no basis for barring them from testifying about it.

A witness "may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter," and that evidence "may consist of the witness's own testimony." Fed. R. Evid. 602. JGH and Esnol were parties to the conversation

and have personal knowledge of what Usuga said. For the reasons stated above, Usuga's statements are not hearsay. Fed. R. Evid. 801(d)(2)(D).

Nor does the existence of a recording limit the participants' testimony. The rule requiring an original recording applies only when a party seeks "to prove its content." Fed. R. Evid. 1002. As the Advisory Committee explained, "an event may be proved by nondocumentary evidence, even though a written record of it was made." Fed. R. Evid. 1002 advisory committee's note to proposed rules. When JGH and Esnol testify about what they heard Usuga say, they are proving the conversation, not the contents of the recording. Defendants cite no authority suggesting that a participant in a conversation may not describe it because the conversation was also recorded. Because the conversation will be the subject of admissible testimony, and because the recording itself is admissible, there is no basis to bar counsel from referring to either in opening statement or closing argument.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' Motion in Limine to Exclude Audio Recording [ECF No. 50] in its entirety. In the alternative, Plaintiffs request that the Court defer ruling on the admissibility of the recording until trial, where questions of foundation, translation, and relevance may be resolved in context, and that the Court in all events (1) permit Plaintiffs to use the recording to impeach Usuga and any other witness whose testimony it contradicts, and (2) deny the Motion to the extent it seeks to preclude testimony, reference, or argument concerning Plaintiffs' conversation with Usuga.

Respectfully submitted the 25th day of September 2026,

Katelyn Schickman, Esq.
Brian H. Pollock, Esq. (174742)
brian@fairlawattorney.com
Patrick Brooks LaRou (1039018)
brooks@fairlawattorney.com
Katelyn Schickman, Esq. (1064879)
katie@fairlawattorney.com
FAIRLAW FIRM
135 San Lorenzo Avenue, Suite 770
Coral Gables, FL 33146
Tel: 305.230.4884
*Counsel for Plaintiffs*