**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 1:25-cv-22530-JB/Torres

JESUS E. GONZALEZ HERNANDEZ, and
ESNOL ALEJANDRO GONZALEZ CANTERO,

Plaintiffs,

v.

STATEWIDE ELECTRICAL SERVICES, INC.,
and NOEL MELO,

Defendants.
_______________________________________________/

**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SPOLIATION SANCTIONS**

Plaintiffs' Response (D.E. 53) rests on three propositions: that the destroyed notes are "handwritten notes no one has seen"; that they were lost before JGH retained counsel; and that JGH is an unsophisticated layperson whose sworn account should be accepted at face value. The record refutes each. Plaintiffs' own witnesses saw the notes and describe their contents. The chronology Plaintiffs assert is unsupported by the declaration they cite and contradicted by JGH's deposition. And the declarations on which the Response depends cannot be reconciled with JGH's deposition, with the public record, or with each other. The Court should grant the Motion or, at minimum, decline to credit the declarations without live testimony.

**I. Plaintiffs' Witnesses Saw the Notes and Know Their Contents**

Plaintiffs describe the destroyed records as "handwritten notes no one has seen." Resp. at 1. That is not so. JGH wrote them. JGH Dep. 40:1-4; 47:1-13 (Ex. J to D.E. 33, ECF No. 33-10); JGH Decl. ¶ 7 (D.E. 53-1). Esnol watched him write them. Esnol Decl. ¶ 5 (D.E. 53-2). Ms. Alfonso Bonachea held them while she transcribed from them and then handed them back.

Bonachea Decl. ¶¶ 5, 7, 9 (D.E. 53-3). The only parties who have never seen the notes are Defendants and this Court.

Nor are the contents unknown. JGH testified that he recorded the hours "per day," that "to keep the record, I have to write down the day, the day of the week and put it on the piece of paper," and that he wrote on "[a] piece of paper that I would write on it every day." JGH Dep. 47:1-13. The word "calendar" on Bates 856 refers to "the sheet of paper which I'd write down, Wednesday the 25th, so many hours, Thursday the 13th, so many hours." *Id.* 48:4-12; *see also id.* 39:5-9; 41:12-24; 43:12-16; JGH Decl. ¶¶ 7, 10; Bonachea Decl. ¶ 5. The notes, on Plaintiffs' account, were a daily, dated record of hours worked. Bates 856 is six station totals with no daily dates, no start times, no stop times, and no daily hours. D.E. 33 ¶ 34; D.E. 33-8.

This is the prejudice. Plaintiffs swear that the daily records "did not contain any hours different from those written on Bates Gonzalez 000856." JGH Decl. ¶ 16. A dated daily record necessarily contains information a list of six totals does not, and it is the dated entries that could have been tested against the SunPass records and the certified payroll reports. JGH discarded the only documents that could confirm or refute it. That distinguishes *ML Healthcare Services, LLC v. Publix Super Markets, Inc.*, 881 F.3d 1293, 1309 (11th Cir. 2018), where the movant could not say the missing video would have shown anything relevant. Here the witnesses who saw the notes say they contained precisely the detail that Bates 856 omits.

Plaintiffs' prejudice argument also contradicts itself. They argue there is no prejudice because the substance of the notes "survives" in Bates 856 and in Plaintiffs' testimony. Resp. at 13. Either the contents are known, in which case the notes have been seen and Plaintiffs' opening characterization is wrong, or they are unknown, in which case Defendants have been deprived of the only check on the eighty-four-hour figure. Plaintiffs cannot maintain both.

## II. Plaintiffs' Chronology Is Unsupported and Contradicted by the Record

*A. The declaration does not establish what the Response says it does.* The Response asserts that JGH's notes may have been lost in one of two moves, "both of which occurred before he retained counsel." Resp. at 4 (citing JGH Decl. ¶¶ 13-14); *see also id.* at 8 (citing JGH Decl. ¶¶ 13-14, 20). Paragraph 14 says only: "Since the Metrorail project, I have moved residences twice." It does not date either move. Paragraph 20 adds that by January 2025, "I no longer had my sheets of paper." But paragraph 13 swears that JGH has no "actual recollection today" of "when or how they left my possession." A witness who does not know when the notes left his possession cannot swear they were gone by a given month; paragraph 20 is a conclusion, not a recollection.

The deposition does. JGH's sworn interrogatory answers, signed December 2, 2025, listed his address as 19320 Southwest 190th Street, which he confirmed at deposition was accurate when signed. JGH Dep. 14:6-17. At his deposition on February 20, 2026, he gave a different address, 624 Southwest 34th Avenue, and could not say when he had moved. *Id.* 17:11-18:6. At least one of the two moves therefore occurred between December 2, 2025 and February 20, 2026: more than a year after JGH retained counsel in January 2025 (JGH Decl. ¶ 20), after the February 24, 2025 preservation demand, after suit was filed on June 3, 2025, and while this case was in active discovery.

Plaintiffs' two accounts cannot both survive. Plaintiffs call the Motion's description of JGH's deposition account a concession. Resp. at 2, 5, 8 (citing D.E. 48 at 4, 7). The Motion described the only account then in the record; Plaintiffs' new declarations are what put the timing in question. If the notes were lost in that move, they were lost by a represented party, during litigation, after his own counsel had demanded that Statewide preserve "personal notes, handwritten diaries, and personal calculations." D.E. 48-1 at 3. The layperson authorities on which

Plaintiffs rely are then inapplicable by their own terms. *Smith v. Future Motion, Inc.*, No. 8:22-cv-320-MSS-MRM, 2023 U.S. Dist. LEXIS 236036, at *14-15 (M.D. Fla. Jan. 3, 2023), turned on the fact that the plaintiff "had not retained a lawyer" when he altered the evidence. *See also Penick v. Harbor Freight Tools, USA, Inc.*, 481 F. Supp. 3d 1286, 1293-94 (S.D. Fla. 2020) (finding bad faith where plaintiff had retained counsel). If instead JGH threw the notes out in September 2023, as he testified, the loss was deliberate, and it is the only account of what happened that any witness has given from present memory.

*B. The only sworn account from memory is the deposition.* JGH's declaration does not retract his testimony that he "threw them out." It says he has no "actual recollection today" of doing so and "believe[s] they may have been" lost in a move, "but I do not know that for certain." JGH Decl. ¶¶ 13-14. A witness who no longer remembers what happened cannot contradict his earlier testimony about what happened; he can only say he has forgotten it. The deposition testimony, given under cross-examination and before this Motion was filed, stands as the only affirmative account in the record: "I threw them out once my wife declared this record here. I had all the numbers for each one of the stations. Why did I want to keep those notes?" JGH Dep. 46:22-24.

The chain of custody confirms that whatever happened, it happened in JGH's hands. Ms. Alfonso Bonachea returned the sheets to JGH. Bonachea Decl. ¶ 9. Esnol did not discard them and does not know what became of them. Esnol Decl. ¶ 10. No one else is claimed to have possessed them.

*C. Bates 856 bears a date that Plaintiffs do not explain.* Plaintiffs swear that Bates 856 was written "in or around September 2023." Bonachea Decl. ¶ 4; JGH Decl. ¶ 9. The top of the page reads "1° Junio 2022 - 1° Junio 2025 (3 yrs)." D.E. 33-8. June 2025 is the month this action was

filed, and June 2022 to June 2025 is the three-year lookback measured from the June 3, 2025 complaint. JGH was asked about the header at deposition and could not explain it beyond speculating that it referred to the years he had worked for Melo. JGH Dep. 48:13-19. Ms. Alfonso Bonachea's declaration itemizes what she wrote on the page, "the names of the six Metrorail stations, the overtime hours for each station, the word 'calendar' next to the Santa Clara and Gap Tie 2 entries, and the note at the bottom about unloading equipment," and omits the header. Bonachea Decl. ¶ 6. No declaration and no part of the Response addresses it.

Plaintiffs have thus offered no explanation for a date range keyed to the filing month of this lawsuit appearing on a document they swear was written twenty-one months earlier. If the header was written in September 2023, the declarants must explain how anyone then knew the June 2025 date. If it was added later, the page was altered after counsel was retained, and the narrative that JGH innocently "kept the summary" and that "Plaintiffs produced it," Resp. at 2; see also id. at 10, loses its innocence. Either way, the unexplained header is reason enough not to accept the declarations' chronology on paper.

## III. The Declarations Should Not Be Credited Without Live Testimony

The bad-faith question turns on whether JGH's explanation for the loss of the notes is credible. *Tesoriero v. Carnival Corp.*, 965 F.3d 1170, 1184, 1186 (11th Cir. 2020). That explanation comes from a witness who has now given the Court sworn accounts that cannot be reconciled with each other or with the record. He testified that he threw the notes out; he now says he does not remember. He swears he has never been a party to a lawsuit, JGH Decl. ¶ 5; the Clerk's docket shows he was a respondent in one. His counsel represents that both of his moves preceded the retention of counsel; his own interrogatory answers show one did not. He swears the notes contained nothing different from Bates 856; he also swears he cannot recall what became of them.

And the one document he did keep bears a date he could not explain at deposition and that no declarant now addresses. Each of these could be an innocent mistake. Together they describe a witness whose account shifts whenever the record contradicts it, and that is the witness on whose word Plaintiffs ask the Court to reject the inference.

Plaintiffs ask the Court to resolve the bad-faith question on declarations prepared by counsel after the Motion was filed. Two features of those declarations weigh against doing so.[1]

*A. The declaration is false on the one point the public record can check.* JGH swears that "[b]efore this case, I had never filed or been a party to a lawsuit." JGH Decl. ¶ 5. The Response repeats the claim twice. Resp. at 3, 11. The Miami-Dade Clerk's docket shows otherwise. In *Cantero Garcia v. Gonzalez Hernandez*, Case No. 2013-021365-FC-04 (Fla. 11th Cir. Ct. filed Aug. 15, 2013), JGH was the named respondent; he was served, filed an answer, was noticed for a November 12, 2013 hearing before a general magistrate, and was subject to a December 12, 2013 final order on the magistrate's report, recorded at Book 28950, Page 2791. Ex. B (Clerk's docket); *see* Fed. R. Evid. 201(b)(2). At deposition, JGH denied having been sued by the petitioner, then acknowledged the proceeding as one pursued "voluntarily." JGH Dep. 11:13-12:4. Whatever the merits of that matter, which are irrelevant here, JGH has been a litigant, and his sworn statement to the contrary is inaccurate. *See Skanska USA Civ. Se. Inc. v. Bagelheads, Inc.*, 75 F.4th 1290, 1314 (11th Cir. 2023) (party's sophistication with regard to litigation bears on preservation conduct).

[1] The certificates of translation attached to each declaration contain unresolved template text ("[read it aloud to him in Spanish in its entirety / provided him with a written Spanish translation]"), and the certificates attached to the declarations of Esnol and Ms. Alfonso Bonachea identify Jesus E. Gonzalez Hernandez as the person who stated he understood the document. D.E. 53-1 at 6; 53-2 at 3; 53-3 at 3. Defendants note the defects because Plaintiffs rely on the declarations as sworn confirmation; Defendants do not ask the Court to strike the declarations on that basis.

*B. The declarations assert knowledge the declarants disclaim.* JGH swears that the notes "did not contain any hours different from those written on Bates Gonzalez 000856." JGH Decl. ¶ 16. He also swears he has no present recollection of what became of the notes. *Id.* ¶¶ 13-14. The sworn equivalence is a conclusion, not a recollection, and it is the very conclusion Plaintiffs ask the Court to accept in lieu of the destroyed evidence.

## IV. The Record Supports a Finding of Bad Faith

Plaintiffs are correct that anticipation of litigation is not the standard and bad faith is. *Tesoriero*, 965 F.3d at 1183. The Motion invoked JGH's admitted anticipation to establish the duty element, and then addressed bad faith separately through the circumstances of the destruction. D.E. 48 at 6-8. Three points require reply.

*First*, Plaintiffs' argument that Defendants cannot establish an "affirmative act," Resp. at 10, depends entirely on the loss-in-a-move theory addressed in Part II, which JGH himself does not affirm from memory. It also misstates the law. The Eleventh Circuit has rejected the contention that a finding of bad faith on circumstantial evidence requires an affirmative act, holding that "failures to act can be just as harmful as affirmative acts of destruction" and that where "other circumstances point[] to a reasonable inference of bad faith," it is "irrelevant whether an act or a failure to act directly caused the spoliation." *Skanska*, 75 F.4th at 1314. The Motion followed the four-hallmark framework, D.E. 48 at 6, and stands by that showing, but the test comes from district court decisions, *Managed Care Solutions, Inc. v. Essent Healthcare, Inc.*, 736 F. Supp. 2d 1317, 1322-23 (S.D. Fla. 2010), and *Calixto v. Watson Bowman Acme Corp.*, No. 07-60077-CIV, 2009 WL 3823390, at *16 (S.D. Fla. Nov. 16, 2009). *Tesoriero* cited *Calixto* only for the fourth factor, and only with a "see also" signal. 965 F.3d at 1185. They are a guide, not a binding checklist.

*Second*, the circumstances here support the inference. JGH kept the favorable one-page summary and discarded the dated daily record that alone could test it. He did so, by his own testimony, at a moment when he "knew that something was going to go wrong," "knew that he wasn't going to pay me," and had told Melo that he "was going to claim all the overtime hours." JGH Dep. 37:5-10; 44:20-23; 45:13-14; 45:21-25. Plaintiffs now say he meant only that he intended to ask Melo for payment. JGH Decl. ¶ 17. That gloss is difficult to reconcile with his testimony that Melo "stole money from us," JGH Dep. 37:10, or with the pre-suit demand his counsel later sent claiming more than $160,000 in commissions and bonuses and $15,762.24 in overtime, *id.* 83:4-7, 20-22. The Response's reliance on *Tesoriero* is misplaced for the same reason. Carnival's steward discarded a broken chair under a routine replacement policy, with no request for preservation and no indication the chair had been selected for disposal because of what it might show. 965 F.3d at 1185-86. JGH, by contrast, kept the one document that supported his claim and discarded the only one that could have been used to test it.

*Third*, *Penick* is the closest analogue and supports the Motion. There, a plaintiff who "voluntarily and personally" scrapped the generator that injured him was found to have acted in bad faith even though "the record does not reflect that Plaintiff specifically intended to harm Defendant or obstruct this lawsuit," because his decision was "purposeful, fully considered," and he "should have known" the item "would be important to both parties' arguments." 481 F. Supp. 3d at 1293-94. The court imposed a rebuttable adverse-inference instruction. *See id.* Plaintiffs distinguish *Penick* on the ground that the plaintiff there had retained counsel. Resp. at 9. On the record described in Part II, so had JGH, at least on one of the two accounts Plaintiffs offer. On the other, JGH made a purposeful, considered decision to discard his daily record while knowing he would pursue the very claim it supported.

## V. The Remaining Factors and the Requested Relief

The prejudice is addressed in Part I. Plaintiffs' argument that Defendants "cannot simultaneously maintain that their own records disprove Plaintiffs' claim and that they are defenseless without JGH's scraps of paper," Resp. at 13, misreads the Motion. Defendants have never claimed to be defenseless; they claim to have been deprived of the only means of testing Plaintiffs' proof against Statewide's records day by day, because Plaintiffs' only contemporaneous record was destroyed by the party bearing the burden. The relaxed evidentiary standard of *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946), exists because employers who fail to keep records should not profit from the gap. Here the employer kept four sets of records and the employee destroyed his own. Denying any consequence would extend to the burden-bearing plaintiff a protection the doctrine denies to the record-keeping party. The dispute over the accuracy of Statewide's records is for the jury, and the notes were the one source that could have shown where, if anywhere, the two sets of records diverged. On Plaintiffs' reasoning, no employer that stands behind its own records could ever obtain relief for an employee's destruction of his.

The potential for abuse is plain. A rule under which a plaintiff may keep a dated daily record, reduce it to a summary in a family member's handwriting, discard the source, and then swear that the two were identical, would invite what occurred here.

Defendants therefore request the relief sought in the Motion: an instruction that the jury must presume the destroyed notes would not have supported the claimed overtime, subject to rebuttal, or in the alternative a permissive instruction. Should the Court be disinclined to rule on the present record, Defendants alternatively request that the Court defer ruling until JGH and Ms. Alfonso Bonachea have testified at trial, or set a brief evidentiary hearing on the chronology, the disposition of the notes, and the header on Bates 856.

## CONCLUSION

For the foregoing reasons and those stated in the Motion, Defendants respectfully request that the Court grant the Motion for Spoliation Sanctions (D.E. 48).

Respectfully submitted,

STEPHEN R. VERBIT, P.A.
6741 Orange Drive
Davie, Florida 33314
Tel: (954) 536-9428
sverbit@verbitlawfl.com

By: /s/ Stephen R. Verbit
STEPHEN R. VERBIT
Florida Bar No. 710857
Counsel for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on October 2, 2026, I electronically filed the foregoing with the Clerk of Court using CM/ECF, which will serve all counsel of record.

/s/ Stephen R. Verbit
STEPHEN R. VERBIT