UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:25-CV-22530-BECERRA/TORRES

JESUS E. GONZALEZ HERNANDEZ, AND
ESNOL ALEJANDRO GONZALEZ CANTERO,

Plaintiffs,

vs.

STATEWIDE ELECTRICAL SERVICES, INC. AND
NOEL MELO,

Defendants.
_______________________________________/

**PLAINTIFFS' REPLY IN SUPPORT OF OMNIBUS MOTION IN LIMINE**

Plaintiffs Jesus E. Gonzalez Hernandez ("Mr. Gonzalez") and Esnol Alejandro Gonzalez Cantero ("Mr. Cantero") (together, "Plaintiffs") reply in support of their Omnibus Motion in Limine [ECF No. 51] (the "Motion") and in response to Defendants' Response in Opposition [ECF No. 52] (the "Response"), and state as follows:

## I. INTRODUCTION

The Response rests on a description of Statewide's timekeeping that Defendants' own witnesses do not support: that Plaintiffs reported their hours to project manager Paola Usuga, who "observed the work, tracked the hours at the jobsite, and reported them" to Defendant Noel Melo, who recorded them the same day. [ECF No. 52 at 7-8]. From that premise, Defendants argue that Plaintiffs' objections go only to "accuracy." [Id. at 2, 6].

Under oath, however, Ms. Usuga testified that she was never at the stations when Plaintiffs arrived, wrote nothing down, and derived the daily figures "with my fingers" from a ten-hour schedule. [ECF No. 33-7 (Usuga Dep. 39:24-40:5, 42:8-18, 64:17-23)]. Mr. Melo testified that the

hours Plaintiffs were paid for do not "accurately reflect the hours they actually work." [ECF No. 33-1 (Melo Dep. 85:8-11)]. That testimony goes not to accuracy but to "the source of information" and "the method or circumstances of preparation," Fed. R. Evid. 803(6)(E) - questions of admissibility for the Court, not of weight for the jury.

The consequence is exclusion. A record that fails Rule 803(6) is hearsay, Fed. R. Evid. 802, and cross-examination does not make it admissible. Plaintiffs do not ask the Court to decide how many hours they worked, only to bar Defendants from proving those hours through documents their own author disavows.

## II. THE AGREED MATTERS AND SECTIONS IV.A AND IV.B

Plaintiffs agree that the stipulations in Section III of the Motion should be memorialized in the Motion's own language, including its reservations, as paragraph 1 of Defendants' proposed order does. [ECF No. 52 at 14-15]. Section IV.A should be granted to the extent of an order, binding all parties, that tracks Rule 37(c)(1) and requires any dispute about a specific item to be raised and resolved outside the presence of the jury before the item is mentioned; Plaintiffs do not seek an advance-leave requirement. Section IV.B should be granted on the reciprocal basis the Motion requested. [ECF No. 51 at 5]. The admissibility of the prior *Hernandez* action, and of any other prior FLSA claim that ECF No. 49 seeks to exclude, should abide the Court's ruling on that motion.

## III. DEFENDANTS' OWN WITNESSES SHOW THAT THE HANDWRITTEN RECORDS AND SPREADSHEET DO NOT SATISFY RULE 803(6)

### A. <u>The Defects Defendants' Witnesses Describe Go to Admissibility, Not Weight.</u>

The Response's central premise is that Plaintiffs' objections "amount to a dispute about accuracy," and that "[a]ccuracy is a jury question." [ECF No. 52 at 2]. The distinction Defendants

draw from *Equity Lifestyle Props., Inc. v. Fla. Mowing & Landscape Serv., Inc.*, 556 F.3d 1232 (11th Cir. 2009), cuts the other way. A contention that the entries in an otherwise qualifying record are wrong "relates to the credibility of the information presented," which the jury weighs. *Id.* at 1244. A showing that the source lacked knowledge, that there was no regular practice, or that the source or method of preparation is untrustworthy goes to admissibility, which the Court decides first. Fed. R. Evid. 104(a), 803(6)(A)-(C), (E); *Equity Lifestyle*, 556 F.3d at 1244 n.19 (district court "first had to find as fact that [the records] were trustworthy"). Plaintiffs' objections are of the second kind: Defendants' own witnesses show that no one with knowledge supplied the entries and that their author changed them.

Nor does the burden allocation the Response invokes [ECF No. 52 at 6] help Defendants. Rule 803(6)(E) assigns the opponent only the burden of showing untrustworthiness; the proponent must first establish the predicate in subparagraphs (A) through (D) by a preponderance of the evidence. Fed. R. Evid. 104(a); *Bourjaily v. United States*, 483 U.S. 171, 175-76 (1987). As shown below, Defendants cannot satisfy subparagraphs (A) and (C), and Plaintiffs' showing under subparagraph (E) comes from Defendants' own foundation witnesses. When the predicate fails, the record is inadmissible hearsay. Fed. R. Evid. 802. Exclusion still leaves Defendants a means of proof: Mr. Melo and Ms. Usuga may testify to what they personally observed, Fed. R. Evid. 602, and may refresh their recollection with the records, Fed. R. Evid. 612. They may not offer, as substantive proof of hours, records their author says do not reflect the hours worked.

**B. <u>The Record Contradicts the Reporting Chain Described in the Response.</u>**

When information passes through more than one person, "all persons involved in the process must be acting in the regular course of business - otherwise an essential link in the trustworthiness chain is missing." *Equity Lifestyle*, 556 F.3d at 1244 (quoting *T. Harris Young & Assocs.,*

*Inc. v. Marquette Elecs., Inc.*, 931 F.2d 816, 828 (11th Cir. 1991)). Plaintiffs do not contend that the FLSA required a time clock, software, or employee signatures. [See ECF No. 52 at 5-6]. The question is whether these particular records satisfy Rule 803(6), and Defendants' own witnesses show that they do not.

The Response asserts that Ms. Usuga "observed the work, tracked the hours at the jobsite, and reported them." [ECF No. 52 at 8]. Her testimony is otherwise. Asked whether she was ever at a station when Plaintiffs arrived for work, she answered: "No, no, no." Asked whether she was there when they left: "Sometimes. But few times, very few times." [Usuga Dep. 42:8-18]. She did not write the times down; she kept them in "[m]y head," because "it was always the same." [Usuga Dep. 39:24-40:5, 65:4-8]. She described her method this way: "If it is 07:00 to 05:30, I knew it was ten hours. . . . So, I just made my math with my fingers and I said, well, ten, ten, ten, ten, we have the 40 hours." [Usuga Dep. 64:17–23].

Mr. Gonzalez's testimony is consistent. He did not report his hours to Statewide, and he reported them to Ms. Usuga only "once in a while." [ECF No. 33-10 (Gonzalez Dep. 74:15-21)]. When he told her they had left work at 9:00 p.m., she "would not write down that we finished at 9 o'clock" and "would only write down 10 hours." [Gonzalez Dep. 75:3-10]. Mr. Melo acknowledged that Ms. Usuga worked from 8:00 to 4:30 while Plaintiffs' scheduled day ran from 7:00 to 5:30; asked how she could verify their start and stop times, he answered, "I didn't use the word verify." [Melo Dep. 88:20-24].

Nor was this relay Statewide's regular practice. Mr. Melo's declaration describes his own recordkeeping since 1999 [ECF No. 35 ¶ 3], but before the Metrorail project Plaintiffs reported their hours "[d]irectly to Mr. Melo." [Usuga Dep. 37:17-20]. Ms. Usuga, Statewide's secretary, served as project manager only for this project, had never done so before, and received no

instruction on keeping time records. [Usuga Dep. 11:13-12:2, 96:4-20, 97:18-20]. A one-project relay through an untrained intermediary is not a "regular practice." Fed. R. Evid. 803(6)(B)-(C). The handwritten records are therefore not business records, and their contents are inadmissible hearsay. Fed. R. Evid. 802.

**C. <u>The Records Reflect Mr. Melo's Adjustments, Not Information Transmitted by Someone with Knowledge.</u>**

The Response argues that the records themselves "refute the premise that entries were adjusted to reach forty hours." [ECF No. 52 at 6]. Mr. Melo testified to the contrary. He explained that "[y]ou see 40 hours" because "I decided as a good faith because they were doing a good job to round it off." [Melo Dep. 33:8-15]. He repeated the point: "I was rounding up the numbers. There is no week that they actually work 40 hours. They always work less than that, so it was my decision." [Melo Dep. 70:15-19]. And when asked whether the hours Plaintiffs were paid for, which he reported in certified payrolls prepared from these same time sheets [ECF No. 33-9 ¶¶ 7, 12], do not "accurately reflect the hours they actually work," he answered: "I did say that and I have proof." [Melo Dep. 85:8-11].

A record that, by its author's own account, contains hours he chose to enter rather than hours someone with knowledge reported is not a record made "from information transmitted by . . . someone with knowledge." Fed. R. Evid. 803(6)(A). Mr. Melo's admissions are a direct showing that "the method or circumstances of preparation indicate a lack of trustworthiness." Fed. R. Evid. 803(6)(E). That some weeks show fewer than forty hours [ECF No. 52 at 6] does not cure the problem; it confirms that no one can tell from the face of the records which entries reflect a report from Plaintiffs, which reflect the default ten-hour schedule, and which reflect Mr. Melo's rounding. That is a defect of method, not accuracy, and it independently requires exclusion.

Rule 403 independently supports the requested relief. Defendants answer only "unfair prejudice" [ECF No. 52 at 9], but Rule 403 also guards against "confusing the issues" and "misleading the jury." Fed. R. Evid. 403. Defendants intend to present these documents as "contemporaneous records of the very hours in dispute" [ECF No. 52 at 9], while their own custodian swears the hours in them are wrong. A record its author disavows has slight probative value as a measure of time worked, and the risk that the jury treats it as one is substantial. Rule 403 thus supports exclusion even if the predicate were met.

**D. *Equity Lifestyle* Turned on Facts That Are Absent Here.**

*Equity Lifestyle* does not help Defendants. There, the predicate rested on a manager with "first-hand knowledge of the units he dispatched" and daily reports from foremen with "first-hand knowledge of the units actually used," and the opponent "presented little to combat [the manager's] trustworthiness." 556 F.3d at 1243-44. Here, the intermediary was absent at the start and end of the workday, kept no record, and supplied figures derived from the schedule; the preparer admits adjusting the totals; and Defendants' representative disavows the records' accuracy. Nor does labeling Mr. Melo and Ms. Usuga "qualified witnesses" [ECF No. 52 at 8] fill the gap: a qualified witness explains the system but cannot supply the knowledge the source lacked. Fed. R. Evid. 803(6)(A), (D). On this record, the Rule 104(a) finding that *Equity Lifestyle* requires cannot be made.

**E. Rule 801(d)(2)(A) Does Not Fill the Gap.**

Defendants contend that Plaintiffs' reports are party admissions. [ECF No. 52 at 8]. But Rule 801(d)(2)(A) reaches only a statement "made by the party," and Defendants must show under Rule 104(a) that the entries actually embody statements Plaintiffs made. Many instead reflect Ms. Usuga's conversion of a scheduled day into "ten" hours and Mr. Melo's later rounding. [Usuga

Dep. 64:17-23; Melo Dep. 70:15-19; Gonzalez Dep. 75:3-10]. And even where Plaintiffs did tell Ms. Usuga something, her oral relay to Mr. Melo is a separate layer that must independently satisfy an exception. Fed. R. Evid. 805; *T. Harris Young*, 931 F.2d at 828. Those entries remain hearsay.

**F. <u>The Spreadsheet Depends on the Same Information, and Defendants Have Given Inconsistent Accounts of How It Was Made.</u>**

Defendants now disclaim any reliance on Rule 1006 for the "412034 Hours" spreadsheet [ECF No. 52 at 8-9] and should be held to that position at trial. But Defendants have given conflicting accounts of how it was made. Mr. Melo first declared that its data was entered under his supervision "at or near the time of each day's work." [ECF No. 33-9 ¶ 9]. He then declared that the handwritten time sheets were "the underlying source" for its entries. [ECF No. 35 ¶ 5]. Ms. Usuga described an Excel report as her own, containing only total hours, kept "to have in mind if I have the 160 hours." [Usuga Dep. 66:2-15]. And Mr. Melo testified that the spreadsheet "hasn't been modified since 2024, which was the last day that we work on this document," months after the 2023 project ended. [Melo Dep. 43:9–13]. Under any account, the spreadsheet is no more reliable than its inputs, and Defendants have not shown that its contents were entered "at or near the time" by someone with knowledge. Fed. R. Evid. 803(6)(A). It falls with the handwritten records.

**G. <u>The Records Should Be Excluded; At a Minimum, Defendants Must Lay the Foundation Outside the Jury's Presence.</u>**

The Court should therefore grant Sections IV.C and IV.D and exclude the handwritten daily time sheets for both Plaintiffs [ECF No. 35, Ex. N; *see* ECF No. 52 at 5] and the "412034 Hours" spreadsheet as substantive proof of Plaintiffs' hours. If the Court prefers to defer a final ruling, it should require Defendants to lay the Rule 803(6) and Rule 801(d)(2) foundation outside the jury's presence before either is mentioned, so the Court can make the Rule 104(a) finding *Equity*

*Lifestyle* requires. If any record is admitted, Defendants should not describe it as a record of hours Plaintiffs reported, approved, or verified unless the foundation supports that description. That is not an order "policing adjectives" [ECF No. 52 at 9]; it confines Defendants to what their foundation shows, and Plaintiffs do not object to its reciprocal application. [*See id.* at 9-10].

## IV. THE SUNPASS RECORDS SHOULD BE EXCLUDED IN THE FORM, AND FOR THE PURPOSES, DEFENDANTS PROPOSE

Defendants' principal answer to the hearsay objection is *United States v. Lamons*, 532 F.3d 1251 (11th Cir. 2008). [ECF No. 52 at 10]. But *Lamons* holds only that data recorded with "so little intervention by humans" that it is "wholly machine-generated for all practical purposes" is not a person's statement, *id.* at 1263-64 & n.23, and it directs that the reliability of such data be tested "through the process of authentication as provided for in Federal Rule of Evidence 901(b)(9)." *Id.* at 1265. There, a witness from the company that processed the data explained how it was extracted and confirmed that she "did not alter the underlying data." *Id.* at 1262, 1264. Defendants identify no comparable witness and no Rule 902(11) certification. They offer Mr. Melo, who can say only that he downloaded the records from Statewide's account. [ECF No. 33-9 ¶¶ 14-16]. And the exhibits Mr. Melo swore were true copies "as received by Statewide from SunPass" [*id.* ¶ 15] are not: the transaction dates are highlighted [ECF No. 33-12], and the copy he used at deposition bore his own "red mark[s]" and "circle[s]" showing, in his view, that Mr. Gonzalez "left early." [Melo Dep. 24:15-17, 64:13-16]. Those marks are the statements of a person, not a machine, and *Lamons* does not reach them. Defendants concede they must authenticate the records outside the jury's presence. [ECF No. 52 at 10-12, 17].

The greater danger is the testimony Defendants intend to build on the records. A toll entry shows only that a transponder passed a plaza at a given time. [ECF No. 33-9 ¶ 16]. Mr. Melo, who

was not with Plaintiffs, reads much more into them: when Mr. Gonzalez was "leaving his house," when he stopped "to pick up his son," and when he "was going back home." [Melo Dep. 64:5-16; *see also id.* at 71:19-72:3]. Neither the machine nor Mr. Melo perceived any of that. Fed. R. Evid. 602, 701(a). Lay testimony translating plaza times into Plaintiffs' whereabouts, start and stop times, or "left early" conclusions should be excluded, and no annotated or highlighted version of the records should go before the jury, as an exhibit or a demonstrative. [*Cf.* ECF No. 52 at 11]. For the same reason, Defendants should be precluded from arguing that the absence of a toll entry shows Plaintiffs did not work. [*See* Melo Dep. 86:17-21, 123:2-4]. Mr. Gonzalez testified that he "didn't always take the expressway" and sometimes used "the side streets." [Gonzalez Dep. 60:2-7]. An inference from silence in the records has no probative value and a substantial risk of misleading the jury. Fed. R. Evid. 401-403.

Nor can the records be tied to Plaintiffs on each day they worked. Mr. Gonzalez testified that he used the company van "until we reached Overtown station" and then drove his "own truck." [Gonzalez Dep. 58:19-23]. Mr. Cantero testified that they did not ride together on "all of those dates" and that "[b]y the third station, he started going in his own car." [ECF No. 33-11 (Cantero Dep. 11:13-18)]. Mr. Melo testified that the van was out of service after September 1, 2023 [Melo Dep. 68:3-14], and the records Defendants filed end on August 29, 2023. [ECF No. 33-9 ¶ 15]. Because a toll entry is relevant only if the van carried Plaintiffs that day, Defendants must first offer evidence sufficient to support that finding for each date they intend to use. Fed. R. Evid. 104(b); *Huddleston v. United States*, 485 U.S. 681, 689-90 (1988). And the records may not be used, directly or by negative inference, for any workweek after August 29, 2023.

## V. CONCLUSION

WHEREFORE, Plaintiffs, Jesus E. Gonzalez Hernandez and Esnol Alejandro Gonzalez Cantero, respectfully request that the Court: (i) memorialize the agreed matters and grant Sections IV.A and IV.B as set out in Section II above; (ii) grant Sections IV.C and IV.D and exclude the handwritten time records and the "412034 Hours" spreadsheet as substantive proof of Plaintiffs' hours or, alternatively, grant the relief described in Section III.G above; (iii) grant Section IV.E by excluding any annotated or highlighted version of the SunPass records, lay testimony translating toll entries into Plaintiffs' whereabouts or hours, any argument from the absence of a toll entry, and any use of the records for workweeks after August 29, 2023, and by requiring Defendants, outside the presence of the jury and before publication, to authenticate the records as received and to show, for each date they intend to use, that the van carried Plaintiffs; and (iv) grant such further relief as the Court deems just and proper.

Respectfully submitted this 2nd day of October 2026,

s/ Katelyn Schickman
Brian H. Pollock, Esq. (174742)
brian@fairlawattorney.com
Patrick Brooks LaRou (1039018)
brooks@fairlawattorney.com
Katelyn Schickman, Esq. (1064879)
katie@fairlawattorney.com
FAIRLAW FIRM
135 San Lorenzo Avenue, Suite 770
Coral Gables, FL 33146
Tel: 305.230.4884
*Counsel for Plaintiffs*